WILLIAM ZIEGLER, Respondent, *v.* ALFRED C. CHAPIN, Mayor, etc., et al., Appellants.

The action authorized by the Code of Civil Procedure (§ 1925) by a taxpayer of a municipality against an officer thereof to prevent waste or injury to the property of the municipality, was only intended to protect against the fraud or bad faith of the officer or to restrain illegal action on his part; it was not intended as a shield to the officer from the effect of his own folly or to enable a taxpayer to try a question of fraud between the officer and those dealing with him.

The complaint in such an action, therefore, is not sufficient which contains simply averments that officials of a municipality have entered into and propose to carry out a contract for the purchase of property, within their authority, but at an extravagant price and without the exercise of proper care and prudence, in the absence of allegations of any fraud, collusion or bad faith on the part of the officials, and this, although the complaint contains averments of fraud on the part of the vendor; in addition thereto it must be averred that the officials, in the face of explanation and knowledge of the fraud, persist in carrying out the contract.

Under the provision of the act of 1886 (§ 5, chap. 335, Laws of 1886) authorizing certain officers of the city of Brooklyn to purchase the property of a water-works company, and authorizing the city, in case said officials were unable to agree with the company upon a price to be paid for the property, to take the same under and by the right of eminent domain " within two years thereafter," it was the duty of the officials named to attempt an agreement with reasonable promptness, and if unsuccessful, to commence proceedings for the condemnation of the

property.   The authority to purchase did not outrun the two years allowed for those proceedings; the authority is for but one negotiation which must culminate in agreement or disagreement in such time as to permit the power to condemn the property to operate.

Where, therefore, the complaint in an action by a taxpayer to restrain the officials named from carrying out the contract for the purchase of said water-works, which contract the complaint alleged was made after the expiration of the two years, *held,* that the contract was illegal and void; that the action was maintainable; and that a temporary injunction restraining the officials from carrying out the contract, pending the litigation, was properly granted.

(Argued April 13, 1891; decided May 5, 1891.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made March 2, 1891, which affirmed an order of Special Term granting an injunction *pendente lite.*

This was an action by a taxpayer of the city of Brooklyn against its mayor, comptroller and auditor, and the Long Island Water Supply Company to annul a contract by said officials with said company for the purchase for or on behalf of said city of the property, franchises, etc., of said company.

The contract in question was entered into by said officials December 22, 1890, they claiming to act under authority of the act of 1886.   (§ 5, chap. 335, Laws of 1886.)

The facts, so far as material, are stated in the opinion.

*George F. Danforth* for appellants.   Where a case is made which, upon the face of the complaint, entitles the plaintiff to the restraining judgment demanded, the granting and continuance of a temporary injunction rests in the discretion of the court of original jurisdiction, but where no fact is stated, which in any view justifies that conclusion, there can be no legitimate exercise of discretion, and the order complained of is reviewable.   It is the legal right of defendants to have it vacated.   (Code of Civ. Pro. §§ 603, 604; *Talcott* v. *City of Buffalo,* 125 N. Y. 280; Laws of 1886, chap. 325; *McHenry* v. *Jewett,* 90 N. Y. 60; *Shasser* v. *Mosuellis,* 108 id. 612.) The complaint states no cause of action.   (*Doolittle* v. *Suprs.,*

18 N. Y. 155; *Roosevelt* v. *Draper*, 23 id. 318; *Osterhoudt* v. *Rigney*, 98 id. 222; Laws of 1886, chap. 335; *Astor* v. *A. R. R. Co.*, 113 id. 110; *People* v. *Jaehne*, 103 id. 182; *People* v. *Kelly*, 7 Robt. 592; *People* v. *Goodwin*, 50 Barb. 562.)

*Almet F. Jenks* for appellants Chapin, Jackson and Rutan. No misconduct being alleged. or proved, the purchase was within the discretion of the officials. (*Osterhout* v. *Rigney*, 98 N. Y. 222; *Morgan* v. *Binghamton*, 120 id. 504; *Talcott* v. *City of Buffalo*, 125 id. 280; Laws of 1886, chap. 335, § 4; *Gamble* v. *Q. C. W. Co.*, 123 N. Y. 91; Laws of 1888, chap. 583, § 3.) If, on the 22d day of December, 1890, chapter 355, Laws of 1886, legally conferred upon the defendant officials the power to make this purchase, then the plaintiff could not in any point of view be entitled to the final relief demanded. Therefore, a temporary injunction was unauthorized. (*McHenry* v. *Jewett*, 90 N. Y. 58; *Strasser* v. *Moonelis*, 108 N. Y. 611.) The decision of the General Term was put upon the ground that the power to purchase conferred upon the defendant officials was limited to two years by the terms of the statute; this was erroneous. (Mills on Em. Domain, § 135; *Botter* v. *R. R. R. Co.*, 39 N. J. L. 664; Dwarris on Stat. 285, 590, 591; *Cushing* v. *Merrick*, 9 Gray, 222; *Leversee* v. *Reynolds*, 13 Iowa, 318; *People* v. *Jaehne*, 103 N. Y. 182; *People* v. *Shepard*, 36 id. 285.) The act does not violate the constitutional provision that no local or private act shall embrace more than one subject, and that shall be expressed in the title. (*People ex rel.* v. *Briggs*, 50 N. Y. 558; *In re Van Antwerp*, 56 id. 261; *In re Knaust*, 101 id. 188; Dillon on Mun. Corp. § 51; *Montclair* v. *Ramsdell*, 107 U. S. 147; *Astor* v. *A. R. R. Co.*, 113 N. Y. 93; *Greaton* v. *Griffin*, 4 Abb. [N. S.] 310.) The act does not violate the constitutional prohibition upon grants of any exclusive privilege, immunity or franchise. (*People* v. *Shepard*, 26 N. Y. 286; *Demarest* v. *Mayor, etc.*, 74 id. 167; *In re U. F. Co.*, 98 id. 139; *S. W. Co.* v. *City of Syracuse*, 116 id. 187; *D. M. Co.* v. *Reber*, 106 id. 386; *Leslie* v. *Lorillard*, 110 id.

519; Cooley on Torts, 277.) The power conferred upon the city to purchase was within the scope of municipal purposes. (*In re Mayor, etc.*, 99 N. Y. 569–588; *People* v. *Mitchell*, 35 id. 551; *People ex rel.* v. *Kelly*, 76 id. 485; *Starin* v. *Edson*, 112 id. 206.) The corporation was authorized to sell all the property described by the terms of the act, under the power thereby given. (*Carpenter* v. *B. & H. R. R. Co.*, 65 N. Y. 43; *Memphis* v. *Commission*, 112 U. S. 609, 622; *State* v. *Shearman*, 22 Ohio, 411, 428; Morawetz on Corp. 926–928; 79 Penn. St. 170.) The provision securing the bond was necessary and is not illegal. (*In re Hand*, 59 Hun, 132; *Starin* v. *Edson*, 112 N. Y. 206.)

*William C. De Witt* and *Thomas E. Pearsall* for the Long Island Water Supply Co., appellant. The complaint and affidavits upon which the order for a preliminary injunction was granted show no cause of action. (*Talcott* v. *City of Buffalo*, 32 N. Y. S. R. 412; *Taylor* v. *Guest*, 58 N. Y. 262; *Oberlander* v. *Spiess*, 45 id. 175.) The right to own, possess, manage and develop the water supply of the Twenty-sixth ward, through the purchase of the franchise and properties of the Long Island Water Supply Company by the mayor, comptroller and auditor, was vested in the city of Brooklyn indefinitely by chapter 385 of the Laws of 1886. The power to purchase is given without limitation; and the time prescribed for the exercise of the right to condemn has no application to the power to purchase. (*Tallman* v. *Syracuse R. R. Co.*, 4 Abb. Ct. App. Dec. 351, 353; *Tracy* v. *Troy & B. R. R. Co.*, 38 N. Y. 433, 437; *Hudler* v. *Golden*, 36 id. 446, 447; *Stief* v. *Hurt*, 1 id. 20, 30; *People* v. *Supervisors, etc.*, 51 id. 401, 406; *U. S.* v. *Gear*, 3 How. [U. S.] 131; *Waller* v. *Harris*, 20 Wend. 561; *In re Water Comrs.*, 96 N. Y. 477; *People* v. *Quigg*, 59 N. Y. 88; *In re Central Park*, 50 id. 497; *Whipple* v. *Christian*, 80 id. 526; Laws of 1888, chap. 583, § 35.) No exclusive privilege was granted by the act of annexation. The legislature merely observed and enforced the good faith uniformly exhibited towards those who have invested their money

in corporate securities when it provided that the bonds held by innocent purchasers for value should be liquidated by city bonds in the acquisition of the property upon which they had become a lien by the laws of the state. (*Duryee* v. *Mayor*, etc., 96 N. Y. 477.)

*Wm. J. Gayner* for respondent. The defendant officials are without power to purchase the stock or the property of the defendant corporation. (Laws of 1886, chap. 335, § 16; *People* v. *Woodruff*, 32 N. Y. 355, 360; *Bergen* v. *Powell*, 94 id. 591; Laws of 1888, chap. 583.) The scheme for the obtaining by the city of the property of the company, is unconstitutional and void, for the reason that the legislature assumes to fix the value or damages to be paid. (*Freeman* v. *Auld*, 44 N. Y. 50; Const. N. Y. art. 1, § 7; Mills on Em. Domain, § 85; *People ex rel.* v. *Briggs*, 50 N. Y. 553, 556; *People ex rel.* v. *Kenny*, 96 id. 294; *Lawton* v. *Steele*, 119 id. 226, 241; *Jones* v. *Jones*, 104 id. 234; *People* v. *Porter*, 90 id. 68; *Neshmeier* v. *State*, 11 Ind. 482, 485; Sutherland on Stat. Const. §§ 176, 178; *People ex rel.* v. *Otis*, 90 N. Y. 48; *Warren* v. *Mayor*, etc., 2 Gray, 84; *Poindexter* v. *Greenhow*, 114 U. S. 270.) The act (§ 4) purported to give it a new or additional franchise or right to furnish water in the annexed territory, by in terms providing that the " City of Brooklyn shall not distribute or furnish water for consumption or use within said territory, or lay any pipes or mains for the distribution or supply of water within said territory, until the expiration of the charter of said company, or until the said city shall purchase or acquire the property of said company as in the next section provided." This provision is unconstitutional and void; and it follows that the enhanced amount which the defendant officials agreed to pay on account of the franchise granted by such provision, is an illegal expenditure, and, therefore, waste. (Const. N. Y. art. 3, § 18; Laws of 1859, § 18; Laws of 1888, chap. 583, § 3; *Baily* v. *Mayor*, etc., 3 Hill, 531; *People ex rel.* v. *Batchellor*, 53 N. Y. 128, 141; Potter on Corp. § 17; *In re U. F. Co.*, 98 N. Y. 139; *Trustees, etc.,* v. *Roome*, 93

id. 313.)    The annexation bill also violates section 16 of article
3 of the State Constitution, viz. : " No private or local bill, which
may be passed by the legislature, shall embrace more than one
subject, and that shall be expressed in the title." (*People* v.
*Hills*, 35 N. Y. 449 ; *Petition of Blodgett*, 89 id. 392 ; *Gaskin*
v. *Meek*, 42 id. 186 ; *Huber* v. *People*, 49 id. 132 ; *Johnson* v.
*Spicer*, 107 id. 185, 202 ; *In re Paul*, 94 id. 497, 506 ; *In re
Mayor, etc.*, 99 id. 569, 577 ; *Astor* v. *A. R. R. Co.*, 113 id. 93,
109, 110 ; *In re Sackett St.*, 74 id. 95, 102 ; *Pullman* v. *Mayor,
etc.*, 54 Barb. 169.)    The clause purporting to empower the
directors of the defendant company to sell out all of its assets,
including its franchise, is unconstitutional and void, in that it
violates the United States Constitution and the Constitution of
this state guaranteeing private rights and prohibiting the pass-
ing of any law affecting contract relations. (*Broadway Rail-
road Case*, 111 N. Y. 1 ; *Powers* v. *Bergen*, 6 id. 358 ;
*Brevoort* v. *Grace*, 53 id. 245 ; *People ex rel.* v. *Kelly*, 76 id.
475 ; *Beveridge* v. *N. Y. E. R. R. Co.*, 113 id. 1 ; Mora-
wetz on Corp. § 1047 ; *Mayor, etc.*, v. *T. T. S. R. R. Co.*, 113
N. Y. 311.)    The law as well as the facts must be "plainly"
against the plaintiff to permit a reversal of the order. (*H. R.
T. Co.* v. *W. T. P. & R. R. Co.*, 121 N. Y. 397, 405.)

FINCH, J.    It is conceded that we cannot review the order
of the Special Term which restrains the defendant officials
from purchasing the property and franchises of the Long Island
Water Supply Company if the complaint states a good cause of
action.    The suit is brought by a taxpayer of the city of Brook-
lyn to prevent such purchase as being illegal and unauthorized
and amounting to a waste of the property and funds of the
city, and it was a proper and reasonable exercise of discretion
on the part of the court to restrain the purchase pending the
litigation in aid of the plaintiff's remedy, unless we are able
to see on an examination of the complaint that he is clearly
and certainly not entitled to the ultimate relief which he seeks.
The appeal comes to us dependent upon that proposition, and
with a frank acknowledgment that the appellants can only

succeed by satisfying us that the plaintiff has suffered no actionable wrong and is entitled to no equitable relief.

In so far as the complaint is founded upon allegations of waste the appellants appear to be right in their assertion that no cause of action is pleaded; for, while the complaint alleges the meditated payment of an extravagant price and states facts which are claimed to indicate a want of prudence and good judgment on the part of the mayor and his associates, yet those facts and the inferences claimed are not beyond the possibility of explanation and criticism, and the complaint contains no averment of fraud or collusion or bad faith on the part of the purchasing officials. We have quite recently declined to become arbitrators between taxpayers and their municipal officers in every instance of disagreeing opinions or conflicting judgments, and have decided that, jurisdiction in the officials existing, the courts can interfere in actions like that before us only where some fraud or collusion or bad faith is alleged and proved. (*Talcott* v. *Buffalo*, 125 N. Y. 280.)

It is said, however, on behalf of the plaintiff that the complaint does contain allegations of fraud on the part of the water supply company; averments that it induced the defendant officials to contract for the purchase by false representations, known to be such and made with the intent to deceive, as to the revenues of the company and the earnings and value of the stock. But the action authorized by section 1925 of the Code is one which the taxpayer may bring against the public officer because of some fraud or bad faith on his part, or to restrain some illegal action. It was not intended as a mode of putting an incapable or confiding official under the protecting guardianship of the court and of making him a ward in chancery to be shielded from the effects of his own folly, nor to enable a taxpayer to try a question of fraud between the officer and those who are dealing with him. If the officer is honest and faithful no suit against him is needed. The taxpayer may explain to him the facts and discover to him the fraud and the courts are open for his protection and the means of redress are at hand. It is only when, in the face of

explanation and knowledge, he still refuses to act and persists
in carrying out the wasteful contract that an action against
him is needed; and then it rests upon his misconduct, upon
his collusion and fraud, which must be alleged and proved.
The legislature could not have intended that the courts should
supply intelligence and prudence to incapable officials at the
demand of a taxpayer, but manifestly did intend to give the
latter protection against the dishonesty or fraud of the munici-
pal agents.

The action, therefore, can only be maintained, if at all, upon
the further ground that the contemplated purchase by the
mayor and his associates is beyond their authority and wholly
illegal and void.   The complaint contains that averment.
There is no disagreement as to the source of the authority to
purchase if any has been granted, and it is claimed to exist in
the terms of the Annexation Act, which merged the town of
New Lots in the city of Brooklyn.   (Laws of 1886, chap. 335.)
Section 5 of that act reads thus: " The mayor, comptroller
and auditor of the city of Brooklyn are hereby authorized for
and in the name of the city of Brooklyn to purchase the reser-
voir, well, machinery, pipes, franchises and all other property
of said company when and at such price as may be agreed
upon by said officers and by the said company by its board of
directors who are hereby authorized to sell and convey the
same to said city, and in case said parties shall be unable to
agree upon a price for the purchase and sale of the said prop-
erty then in that case the power to acquire said property and
franchises by the right of eminent domain is hereby expressly
delegated to said city of Brooklyn, and the said officers in the
name of and for said city within two years hereafter may pro-
ceed to acquire and may acquire all such property by proceed-
ings such as are required for the acquiring of additional land
for railway purposes by corporations formed under the pro-
visions of chapter one hundred and forty of the Laws of
eighteen hundred and fifty.   And all such property, when
thus purchased and acquired, shall thereupon become and be
a part of the water supply property of the said city, but it

shall be held subject to two mortgages now on said property, each made to secure the sum of two hundred and fifty thousand dollars and interest."

I have quoted the section at length in order that we may better judge between the two opposing constructions which have been presented for our consideration. As often happens, one clings to the precise letter of the enactment while the other seeks to evolve its real spirit and meaning; the study of one ends at a single uncompromising word, while that of the other pervades the whole section and calls to its aid the light furnished by the surrounding circumstances. The defendants claim that it confers a general and unlimited authority to purchase the property of the water supply company "when" an agreement with that company can be made and at any time in the future; and the plaintiff insists that the act contemplated an effort to agree with reasonable promptness and one which if unsuccessful could be followed by the permitted proceedings under the law of eminent domain, and that the authority did not and could not outrun the two years allowed for those proceedings. The latter is the interpretation of the General Term. Some reference to the situation of the respective parties at the date of the enactment will aid in appreciating its provisions and in ascertaining its meaning.

The city had its own system of water-works, with ample power to extend them into the annexed district, and the right of eminent domain for the purpose of taking land or extinguishing water rights which it appears to have obtained in 1857 when it was vested with the right to absorb the Nassau Water Co. That company was incorporated in 1855 (Chap. 333), for the purpose of supplying the "consolidated city of Brooklyn" with pure water. It had a capital stock of three millions of dollars, for nearly one-half of which the city was authorized to subscribe, and was vested with the right of eminent domain. The charter further authorized the city, at any time within twenty years, to take and hold the entire capital stock, paying therefor the amount actually paid in with twenty per cent premium. In 1857 (Chap. 22), the mode of acquisi-

tion was changed. The stockholders of the Nassau Water Co., upon filing their consents to take for their stock par and seven per cent from the date of issue, were authorized to sell and the city to buy. The directors of the company were thereupon made water commissioners of the city, and the right of eminent domain possessed by the corporation was transferred to the city. In 1859 (Chap. 396), that right was explicitly given, and the extension of mains and construction of new work authorized, and the revision of 1888 repeats the provisions. Under one or more of these acts the city stood, at the date of the annexation of New Lots, empowered to extend its mains through the annexed district, and armed with authority to condemn the land or water rights rendered necessary by the extension. If at that time it had already absorbed the Nassau Water Company, it did so under acts which fixed the price to be paid, and left no opportunity for extravagance or waste. But at the date of the Annexation Act the town of New Lots was occupied by the Long Island Water Supply Company, which had been incorporated under the general act of 1873 (Chap. 737), at a later period amended by the act of 1881 (Chap. 213). Under these laws permission had been granted to the company to supply the town with water, and it had entered upon the work and was engaged in its performance. The proposal to annex the town of New Lots to Brooklyn had in it elements of danger to the water supply company. If the city should parallel the existing mains and furnish its own supply the company might easily be ruined, and it was natural that the interest thus threatened should seek some measure of protection in the Annexation Act itself. It is not surprising, therefore, to find in that act provisions framed to meet the emergency. The plan adopted was to authorize a purchase by the city of the plant of the company and shut off the city's competition if it refused to buy. The earlier projects of similar character were, as we have seen, conditioned upon a fixed price, but in this instance a result deemed fair to both parties was effected in a different manner. The city was given an option to purchase at a price agreed upon, or, upon

failure to agree, at a price to be fixed by commissioners of appraisal. But the city might decline to buy or to condemn, and to meet that emergency section four of the act provided that the city should not extend its mains into the annexed district during the life of the company unless the option to purchase should be exercised. The plan formulated by the Annexation Act thus accomplished two things: it protected the city, if it chose to purchase, by giving it the power to condemn the company's franchise as well as its tangible property, which, under the previous acts, it could not have done (*Matter of Rochester Water Com'rs*, 66 N. Y. 418): and if the city chose not to buy, the act protected the company by excluding during its charter life the municipal competition. The law put neither party at the mercy of the other, but equally guarded the rights of both. It said to the city in substance — buy out this company with the right to condemn its franchise if it asks an unfair price, or else let it alone for its corporate life, freed from your ruinous rivalry.

I think that is the fair and just interpretation of the statute. It framed a special provision to meet a special emergency. It was for the city an enabling act of which it could avail itself only according to the conditions imposed and in the manner provided. A construction which leaves the authority to purchase operative upon the expiration of the two years, and when the power to condemn has ceased to exist, and when, by the city's neglect to act, the value of the company's franchise has been gravely increased, and so puts the negotiation wholly at the mercy of the vendors is repugnant to the purpose of fairness and equality which the statute evidently labored to secure.

But it is said that its words are imperative and not to be changed or disregarded; that there is authority granted to buy "*when*" a price is agreed on and so whether within or without the two years. With all due respect to the potency of the adverb we must not fail to observe that it is "when" and not "whenever." It respects a point of time in the progress of a single negotiation and not in the events of an unlimited future. It contemplates a possible agreement as to price in the course

of the one authorized negotiation, of the one permitted effort to buy, and " when " that occurs the authority to purchase arises. But if the single negotiation contemplated ends in a disagreement then the statute declares — " then in that case " — the city may condemn, but must exercise the right within two years or not at all. The only negotiation authorized is one which may so end in a disagreement as to permit of a condemnation; may so end that " then in that case " the right of eminent domain may be employed ; and no other or broader authority is given or contemplated. It is not an authority which is general and unlimited, but one which is special and particular ; it is not a rule of action under all circumstances, but one to meet and fit a present and specified emergency ; it is an option which, if unexercised within the designated limits and prescribed manner, is lost forever and does not survive ; it is an authority for one negotiation which must culminate in agreement or disagreement in such time as to permit the ulterior and consequent power to operate ; it is a right only to be exercised while the vendor is under the shadow and restraint of the law of eminent domain. Thus understood, the adverb " when " has its due allowance of force and meaning and is neither superfluous nor independent of its surroundings.

And so, while we freely acknowledge that the question admits of honest differences of opinion, we deem the construction of the General Term the correct and accurate interpretation of the statute.

The order should be affirmed, with costs.

All concur.

Order affirmed.