(23 Misc. Rep. 18.)

### GLEASON v. DALTON et al.

(Supreme Court, Special Term, Kings County. March 15, 1898.)

1. MUNICIPAL CORPORATIONS—CONTRACTS.
   Charter of New York, § 419, requiring that all work and supplies for purposes involving an expenditure of more than $1,000 shall be done and furnished under a contract founded on bids submitted after an advertisement therefor, does not apply to cases which cannot be the subject of competition, as where there can be but one possible genuine bidder.

2. SAME—ADVERTISEMENT FOR BIDS.
   Whether there can be more than one genuine bidder for a proposed contract is a matter not resting in the discretion of the public officer making the contract, but one he must determine according to the fact; and the court has jurisdiction to inquire whether he has done so, without any allegation of fraud or breach of official trust.

Action by Patrick J. Gleason, a taxpayer, for a perpetual injunction to restrain the defendant William Dalton, as commissioner of

water supply of the city of New York, from making a contract with the defendant the Citizens' Water Company of Newton for the supply of water to the city of New York in the borough of Queens without having first advertised 10 days for bids.    Motion for a permanent injunction.    Granted.

F. H. Van Vechten, for plaintiff.
Sheehan & Collin, for defendant Citizens' Water Co.
A. F. Jenks, for defendant official.

GAYNOR, J.    The contract which the commissioner of water supply proposes to make for the city with the defendant the Citizens' Water Company, is for 3,000,000 gallons of water a day, and as much more as the said commissioner may see fit, for three years, at $65 a million gallons, for the territory in the borough of Queens which was formerly Long Island City.    Thus is the city to pay $213,000 to the said private water company during the three years, and no one knows how much more.    The affidavit of the chief engineer of the department of water supply states the purpose of the water officials to be to take water from the defendant water company for the term of the proposed contract, or longer, and then to acquire its franchise and plant for the city.    And the proposed contract has in it a clause that the city may buy out the company at the expiration of the contract "at a valuation to be determined at the time of the sale."    Reduced to a plain statement, this all means that the franchise and plant of this private water company are needed and are to be acquired for the city by the water officials, but instead of so acquiring them now, and at their present value, the said officials are first going to take water from the said company, and pay it large sums therefor, for several years.    By that means it is plain that the revenue of the said company is to be greatly enhanced, and its franchise made of great value, and then such franchise is to be acquired for the city and paid for at that value, instead of at its present value. It is quite impossible to see why this should be done, when the city has unrestricted power to add to its own water plants, and issue bonds to pay therefor.    The plaintiff presents an affidavit that the city's own water plant in the said former territory of Long Island City could be made to produce an adequate supply by an expenditure of $150,000.    This is controverted by the affidavits for the defendants.    But without entering into that question it is not perceived why the mains of the said territory should not be temporarily connected with the mains of the borough of Brooklyn during the few months that it would take for the city to acquire the franchise and plant of the said private water company at their present value, and issue bonds therefor.    It is not asserted that the supply and static head of the Brooklyn water system are not ample for such a temporary use.    To first enhance the value of such franchise, and then buy it, would be a plain spoliation of the funds of the city.

Although the complaint alleges the said price of $65 a million gallons to be excessive, and that there are two other companies which could bid, and that water can be got by competition for less.

it is very doubtful if the complaint is so drawn as to permit the court to grant relief upon the foregoing aspect of the case. The plaintiff seems to desire to put the stress of the case wholly upon the allegation that no valid contract may be made, except upon competitive bids after a public advertisement therefor of 10 days, and to prevent the case from being decided upon the broader basis which concerns the whole community, instead of only a few water companies holding franchises from the community. No definite allegation of fraud or breach of official duty is made in the complaint. The case must therefore be viewed in that aspect.

Section 419 of the city charter requires that all work and supplies for a job or purpose which in its aggregate involves the expenditure of more than $1,000 shall be done and furnished under a contract founded on sealed bids submitted in response to a notice of ten days by advertisement. This necessarily has reference only to work or supplies which may be the subject of competition, and not to cases where the furnishing of the work or supplies cannot be made competitive. People v. Flagg, 17 N. Y. 584; Harlem Gas-Light Co. v. Mayor, etc., of New York, 33 N. Y. 309; Ex parte Dugro, 50 N. Y. 513; Baird v. Mayor, etc., 96 N. Y. 567. In the Harlem Gas-Light Co. Case, it was held that a contract for the lighting of the streets by gas was valid, though no bids had been advertised for, for the reason that there was only one gas company with a plant in the territory, and capable of making a genuine bid. To require a contract to be given upon advertisement for bids in such a case would be to put the city, to some extent, at the mercy of the one possible genuine bidder. The same rule applies to the present case, if the defendant water company is the only one that can supply the water required, or any substantial part of it. Whether that is the case is a question of fact to be decided upon the trial.

No exercise of discretion by a public official can be interfered with or upset by the courts at the suit of a taxpayer, except upon an allegation in the complaint, and a specific finding of fact thereon, that fraud or breach of official trust was committed therein. Talcott v. City of Buffalo, 125 N. Y. 280, 26 N. E. 263; Ziegler v. Chapin, 126 N. Y. 342, 27 N. E. 471; Chittenden v. Wurster, 152 N. Y. 345, 46 N. E. 857, and 153 N. Y. 664, 47 N. E. 273. The commissioner of water supply has the power to determine whether there could be more than one bidder for the water required, if bids were advertised for, but he has no discretion in the premises. He has to determine according to the fact, and the court has jurisdiction to inquire whether he has done so, without any allegation of fraud, or breach of official trust.

The motion for a permanent injunction is granted.