(33 App. Div. 1.)

## KINGSLEY v. BOWMAN et al.

(Supreme Court, Appellate Division, Fourth Department.    July 26, 1898.)

1. COUNTY SUPERVISORS—POWERS—PUBLICATION OF PROCEEDINGS.
     Under Laws 1892, c. 686, § 18, requiring a board of supervisors to cause its proceedings to be printed in pamphlet form, and as many bound copies to be printed as the board may deem necessary for distribution, the number of pamphlets to be published, and the limit on the price to be paid therefor, is in the discretion of the board.

2. SAME.
     Laws 1892, c. 686, § 17, directing that all acts or resolutions passed by a board of supervisors "within six weeks after the close of each session [shall be] published in the newspapers in the county appointed to publish the session laws of the legislature," has no reference to the ordinary proceedings of the board, but only to such as are legislative in their character.

3. SAME.
     Laws 1895, c. 173, § 6, providing that keepers of county institutions and county officials may purchase, for the use of such institutions or offices, all supplies necessary for their support and maintenance, does not authorize the publication of the daily proceedings of a board of supervisors.

4. SAME.
     A board of supervisors is confined, in the exercise of its authority, to the powers which are conferred on it by law.

5. SAME—ABUSE OF DISCRETION—TAXPAYER'S ACTION.
     An abuse of discretion by the supervisors in the award of a contract for public printing to one whose bid was slightly in excess of the lowest bid will not, in the absence of bad faith on their part, authorize the maintenance of a taxpayer's action.

Appeal from special term, Erie county.

Action by Teresa M. Kingsley against Carl E. Bowman and others, constituting the board of supervisors of the county of Erie, and another, to restrain the board from entering into a contract for the daily publication of its proceedings, and from entering into a contract with a certain newspaper for the printing of a certain number of copies of its proceedings, at a certain price.    From an order denying a motion for an injunction pendente lite, plaintiff appeals.    Reversed.

On the 4th day of January, 1898, the defendants, all but one of whom constitute the board of supervisors of Erie county, adopted a resolution directing their clerk, who is also one of the defendants, to invite sealed proposals from the daily papers printed in the English language, in the city of Buffalo, for the publication of the proceedings of the board and of the notices of tax sales in the county of Erie for the year 1898, including the delivery in the morning, before the opening of each session, of 60 copies of the minutes of the preceding session, in pamphlet form, with covers in which to file the same; also for furnishing, at the close of the annual session of the board, 3,000 copies of its proceedings, and of the annual reports of the various county officers, in pamphlet form; and also for a copy of the paper containing the daily proceedings, to be delivered to each member of the board and to the clerk thereof. In pursuance of such direction, the defendant McCloskey, as clerk of the board, on the 6th day of January, 1898, addressed a letter to the publishers of the various city papers, inviting them to make sealed proposals for the work and materials above specified; and in response to this invitation proposals were subsequently received from the firm of James D. Warren's Sons, who are the owners and publishers of the "Buffalo Daily Commercial," and also from Charles H. Webster, the publisher of another paper, known as the "Daily Mercantile Review." On the day following, these proposals, which, it seems, were the only ones received, were opened by the board, and referred to its committee on printing, which committee subsequently recom-

mended that the proposal of the Buffalo Commercial be accepted, and thereafter, and on the 1st day of February, 1898, the board of supervisors adopted the following resolutions, viz.: "Resolved, that the Buffalo Commercial be, and it is hereby, designated as the official paper of the county of Erie for the year 1898. Resolved, that the proposal of the Buffalo Commercial to print the proceedings of the board of supervisors of Erie county in accordance w th their bid, and the notice of tax sales for 1898, including the delivery in the morning, before the opening of each session, of sixty copies of each session's minutes, in pamphlet form, with properly inscribed hard covers in which to file the same; also to furnish, after the close of the annual session, three thousand copies of said proceedings, bound in pamphlet form, with app o-priate covers, containing the annual report of the various county officers that may be presented during the month of January, 1899; also to furnish one copy of their paper daily to the clerk, and to mail one copy containing the minutes of the last meeting, to each member of this board, at his home address,"—be accepted. The proposal of the publisher of the Daily Mercantile Review was for a less sum than that for which the successful bidder offered to do the work; but it appeared that the Commercial circulated generally throughout the county of Erie, while the circulation of the Mercantile Review was exceedingly limited, and confined principally to lawyers and real-estate dealers in the city of Buffalo. Upon this state of facts, which is not controverted, the plaintiff brings this action, under what is known as the "Taxpayers' Act," to restrain the defendants from entering into the contract contemplated by the resolutions adopted on the 1st day of February, upon the ground that such a contract would involve the illegal wasting of public funds, and this appeal is from an order of the special term denying the plaintiff's motion for an injunction pendente lite.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Edward L. Jellinek, for appellant.
John W. Fisher, for respondents.

ADAMS, J. The concessions of counsel have simplified the issues herein somewhat, and, so far as the matters still in controversy are concerned, we find that there is much in the case upon which the plaintiff rests her contention which may be disposed of without extended discussion. In 1884 the legislature of this state enacted a law which was designed to provide "for the better collection of taxes in the county of Erie," and this act (Laws 1884, c. 135, § 14) directs that notices of tax sales shall be published in two newspapers in the city of Buffalo, "one of which shall be the official paper of the county," and that the compensation therefor shall, within certain specified limits, be fixed by the board of supervisors at their annual session in each year. Inasmuch as the resolution which awarded the contract for publishing such notices to the Buffalo Commercial was preceded by another designating that as the official paper of the county, and it being conceded that the price agreed upon for such publication was within the statutory limit, there seems little opportunity for charging the defendants with a violation of the law, or even with an abuse of the discretionary power which the statute vests in them in selecting that paper as the medium through which notices of tax sales should be given to the public. And the situation is virtually the same as respects the publication of the proceedings of the board in pamphlet form, for by section 18 of chapter 686 of the Laws of 1892, known as the "County Law," it is provided that:

"Each board of supervisors shall cause as many copies of the proceedings of its session, certified by its chairman and clerk, to be printed as a county charge in a pamphlet volume as soon as may be after each session, as they may deem necessary for exchange with other boards and for the members of the board and other town and county officers."

The most casual reading of this statute makes it clear, we think, that, while it commands the board of supervisors to publish its proceedings in a pamphlet form, it does not specify the number of pamphlets to be published, nor fix any limit to the price to be paid therefor, but very properly leaves these matters to be determined by the board, in the exercise of its discretion. Awarding the contract for printing these pamphlets to the Commercial at a price which slightly exceeded that at which the publisher of the Mercantile Review offered to do the same work may possibly have amounted to an abuse of the discretionary power which the legislature had thus conferred upon the defendants; but, if so, that fact would not, in the absence of any allegation of bad faith, authorize the plaintiff to maintain this action. Talcott v. City of Buffalo, 125 N. Y. 280, 26 N. E. 263.

When, however, we come to consider the matter of publishing the daily proceedings of the board, some very different questions present themselves for our consideration, and the first and most important thing to be observed in this connection is that the action of the defendants in inviting and accepting proposals for this particular work is entirely without statutory authority. Section 17 of the county law, which directs that all acts or resolutions passed by the board of supervisors "within six weeks after the close of each session [shall be] published in the newspapers in the county appointed to publish the session laws of the legislature," has no reference to the ordinary proceedings of the board, but only to such as are legislative in their character, and within the scope and authority of section 27 of article 3 of the state constitution.

But it is insisted that the furnishing of the printed copies of the daily proceedings may be regarded as in the nature of "supplies," which the defendants were authorized to provide themselves with by what is known as the "County Auditor Act" (Laws 1895, c. 173); the sixth section of that act, which is the one invoked in support of this proposition, providing that:

"Keepers of county institutions and county officials may purchase for the use of such institutions or offices all supplies necessary for their support and maintenance; all accounts for which shall be presented to the county auditor, to be examined by him, as prescribed in this act. If directed by the board of supervisors, with or without the recommendation of the county auditor, supplies for such county institutions or officers, shall be purchased under contract let to the lowest bidder, upon a notice publicly announced in a manner and form prescribed by the board of supervisors."

It would require, we fancy, a very strained construction of this statute to find in it any warrant for the expenditure of public moneys to defray the expenses of publishing the daily proceedings of the board of supervisors of a county; for, even if the papers containing such proceedings can be regarded as necessary supplies, the board is not a "county institution," neither are its members "county officials," and consequently they are not within either the letter or the intent of the section above quoted.

But, without dwelling any longer upon this feature of the case, it may be remarked that the board of supervisors, while created by the constitution (article 3, § 26), derives all its powers to act from the state legislature. It cannot, therefore, be said to possess any inherent powers, but its exercise of authority must in all cases, and especially in the expenditure of public moneys, be confined to the powers which are conferred by law, and enumerated in the statute conferring them. Brady v. Supervisors, 10 N. Y. 260; Parker v. Supervisors, 106 N. Y. 392–410, 13 N. E. 308. It would seem to follow, therefore, that the attempt upon the part of the defendants to carry into effect so much of the resolution of February 1st as contemplates the publication of the daily record of their proceedings at the expense of the county was an illegal exercise of power. and consequently the court would be justified in restraining such action at the instance of a resident taxpayer who, in good faith, invoked its aid. Code Civ. Proc. § 1925; Talcott v. City of Buffalo, supra; Ziegler v. Chapin, 126 N. Y. 342, 27 N. E. 471; People v. Board of Sup'rs of Queens Co., 131 N. Y. 468, 30 N. E. 488. We conclude, therefore, that the order appealed from should be reversed. Order reversed, with $10 costs and disbursements. All concur.

FOLLETT, J. I concur in the opinion of Mr. Justice ADAMS, holding that the action of the board of supervisors in directing the daily publication of its proceedings was without statutory authority. The opinion demonstrates that this action of the board was illegal, and, if consummated, will impose an illegal tax upon the taxpayers of the county of Erie.

There is no evidence in the record that the plaintiff's husband is one of the proprietors of the Daily Mercantile Review. All that appears in the record on this subject is found at folio 150, in an affidavit made by the manager of the Buffalo Commercial, the successful bidder for the work, where it is stated:

"Deponent further states that Charles F. Kingsley, who is one of the sureties in the undertaking given herein, is, or claims to be, one of the proprietors of the said Mercantile Review, and the husband of the plaintiff herein; that the attorneys for the plaintiff are the attorneys for the said Mercantile Review; and deponent is informed and believes that the said action, while brought in the name of the said plaintiff, is in reality instituted and conducted by the proprietors of the said Review, not for the purpose of protecting the interests of the public, but to further their own private ends and interests."

This averment is entirely upon information and belief, and neither the sources of the affiant's information nor the grounds of his belief are disclosed. Such an averment is entitled to but little weight in judicial proceedings, and, especially, in a case where the contrary is positively averred by one presumably having personal knowledge of the fact. It is alleged in the complaint, and averred in the affidavit accompanying the same, that Charles H. Webster is the owner and publisher of the Daily Mercantile Review. However, if it appeared that this plaintiff was one of the owners of the Daily Mercantile Review, instead of being the wife of a person supposed to have an interest therein, and that she brought the action by reason of her interest, such facts would not bar her right to maintain this action, or her right

to restrain pendente lite the imposition of an illegal burden upon her, and upon all other taxpayers, by the unauthorized acts of the defendants. In an action to enforce individual rights, and to compel a defendant to do that which, in equity and in good conscience, he ought to do, the plaintiff must come into court with clean hands; but the maxim that "he who comes into a court of equity must come with clean hands" is not applicable to the case at bar, but to a case in which the plaintiff has been guilty of misconduct or inequitable conduct in respect to the subject-matter of the litigation, affecting the rights of the litigants, and to actions brought by mere volunteers,— persons having no interest in the litigation.

"When a court of equity is appealed to for relief, it will not go outside of the subject-matter of the controversy, and make its interference to depend upon the character and conduct of the moving party, in no way affecting the equitable right which he asserts against the defendant, or the relief which he demands." 1 Pom. Eq. Jur. § 399.

This plaintiff is not a volunteer. She is a taxpayer, and the statute gives her the right to maintain this action, and she has done nothing which induced the illegal action of the defendants, and it is not averred that she has been guilty of misconduct in respect to the action. By this action the defendants are not sought to be compelled to do that which, in equity and in good conscience, they ought to do, but the action is to restrain them from doing that which they have no statutory right to do,—waste the property of the taxpayers by imposing taxes without the authority of law. There is a broad distinction between actions for affirmative relief by and against individuals and actions to restrain the illegal acts of public officials. Any taxpayer is authorized to maintain this action, no matter what his private interest or motive may be, and in case public officers, whose duty it is to protect the taxpayers, determine to impose a liability upon them without authority, and waste their property, as in the case at bar, as is clearly demonstrated by the opinion of Mr. Justice Adams, an action should be encouraged to restrain the consummation of the wrong. It is unfortunate that violators of public law, civil or criminal, are too seldom prosecuted unless the prosecution is instituted and pressed by persons personally aggrieved by the violations consummated or proposed, and a rule that such persons may not maintain actions to prevent the illegal acts of public boards and officers would be contrary to a sound public policy.

Section 1925 of the Code of Civil Procedure is a remedial statute, passed to afford a remedy for a growing evil, and, like all such statutes, should be liberally construed, so as to suppress the mischief aimed at and advance the remedy given.

In Reynell v. Sprye, 1 De Gex, M. & G. 660, it was held that "where the parties to a contract against public policy, or illegal, are not in pari delicto, and where public policy is considered as advanced by allowing either, or at least the more excusable of the two, to sue for relief against the transaction, relief is given to him." This rule is also declared in Tracy v. Talmage, 14 N. Y. 162, 181. For a stronger reason, a plaintiff should not be denied the right to maintain an action given by statute for the redress of a public wrong. The maxim in

equity corresponds with the legal maxim: "Out of fraud no action arises, and as between parties who are alike in wrong, no relief will be granted to either." But, before the rule is applied, the parties must be in pari delicto, as well as particeps criminis; for the courts, although the contract be illegal, will afford relief to the more innocent party, where equity requires it. Id. Any citizen who is a taxpayer has the right to maintain an action, legal or equitable, to compel public officers to obey the law, or to restrain them from violating the statutes, and it is quite immaterial whether the plaintiff in such an action has or has not a personal interest in the result of the action. For example, any citizen may sue out a mandamus to compel public officers to obey the statute, and in such cases it is quite immaterial who the relator is or what his interest may be. People v. Halsey, 37 N. Y. 344; People v. Daley, 37 Hun, 461. This question has been the subject of judicial consideration.

In Hull v. Ely, 2 Abb. N. C. 440, it was held at special term that an injunction pendente lite should not be granted in an action brought under chapter 161 of the Laws of 1872 by a taxpayer, in which it was admitted that it was not brought for the protection of the plaintiff and of other taxpayers, but at the instigation and expense of parties using the ferry franchise, the sale of which was sought by the action to be enjoined. In Kimball v. Hewitt (Com. Pl.) 2 N. Y. Supp. 697, affirmed 15 Daly, 124, 3 N. Y. Supp. 756,—an action brought by a taxpayer under chapter 673 of the Laws of 1887,—an injunction pendente lite was denied because it appeared that the plaintiff brought the action at the instigation of third persons, and for their benefit, and not for the protection of the interests of taxpayers. In Starin v. Mayor. 42 Hun, 549 (reversing 1 N. Y. St. Rep. 545),—an action brought by a taxpayer under chapter 531 of the Laws of 1881, to restrain the execution of a lease of a wharf and ferry franchise,—it was held that a taxpayer's action might be maintained by a rival bidder at the sale whose bid was higher than the one to whom the franchise was sold. It was said:

"He [plaintiff] was a bidder at the sale, and was interested in the use of the wharf and ferry franchises previous to the time of the making of the sale, and because of his interest the objections made by him to the authority of the sinking-fund commissioners to make the sale. in the manner in wh ch it took place, it has been urged should not be considered, and that this action cannot be maintained by him. But the law contains nothing disabling a taxpayer who may have been desirous of obtaining the leasehold inter st, or who bid at the sale, or previously owned a lease hold term in the same property, from maintaining such an action as this. What it requires is that the plaintiff shall be a taxpayer assessed for property to the amount, at least, of $1.000, and that the requisite bond shall be executed and delivered, as that has been directed by the law; and that the plaintiff was such a taxpayer, and this bond has been executed and filed, appears as facts in the case, and that distinguishes this case from Hull v. Ely, 2 Abb. N. C. 440. Under the provisions of the statute, he was a person authorized to maintain the action, if, upon the facts appearing, the disposition proposed to be made of the property and ferry franchises was illegal. The object of this statute is to secure the protection of public property, and to subordinate the acts of officials in its disposition or appropriation to the restraints of the law. And it requires to be liberally construed and applied to carry this object into effect. Ayers v. Lawrence, 59 N. Y. 192."

The judgment of the general term in the case last cited was reversed (112 N. Y. 206, 19 N. E. 670), but not on the ground now under consideration, the court of appeals making this significant remark:

"We shall assume that there is nothing in the record which in any way precludes the plaintiff from maintaining this action, provided it could be maintained by any taxpayer under the act (chapter 531, Laws 1881), entitled 'An act for the protection of taxpayers.'"

It is clear, I think, that, upon principle and by the weight of authority, the plaintiff has the right to maintain this action, and to have an injunction pendente lite.

Nor can I concur in the view that the award of the printing, which the board was authorized to contract for, was a legal exercise of the power conferred on it. The Daily Mercantile Review offered to print daily the proceedings of the board at 10 cents per folio; the work was awarded to the Buffalo Commercial at 15 cents per folio. The Daily Mercantile Review offered to furnish 60 copies of each session's minutes at 40 cents per page; the work was awarded to the Buffalo Commercial at 60 cents per page. The Daily Mercantile Review offered to furnish 3,000 printed copies of the proceedings at $1.25 per page; the work was awarded to the Buffalo Commercial at $1.50 per page. The Daily Mercantile Review offered to publish the tax sales at 50 cents per description; the work was awarded to the Buffalo Commercial at 54 cents per description. As is shown by Mr. Justice ADAMS, the printing of the daily proceedings in a newspaper is not authorized by law, and it is conceded that the board had the right to order the publication of tax sales in the Buffalo Commercial, that being the official paper of the county. When the motion for an injunction pendente lite was denied, the defendants had not answered, and the only reason appearing in their affidavits for letting the printing to the highest instead of to the lowest bidder is that the circulation of the Buffalo Commercial vastly exceeds that of the Daily Mercantile Review, and that the citizens of the county would not so generally be afforded an opportunity to read daily the proceedings of the board of supervisors if published in the latter paper instead of in the former. But, as before stated, we all agree that the board had no right to contract for this service, and so the only excuse presented by the defendants in their affidavits for letting the work to the highest instead of to the lowest bidder fails.

I think the order should be reversed, with $10 costs and disbursements, and an injunction granted restraining defendants from entering into or performing any contract for the daily publication of the proceedings of the board of supervisors, and restraining them from entering into or performing a contract with the Buffalo Commercial for printing 3,000 bound copies of the proceedings at $1.50 per page; with $10 costs of the motion.