quittal because of the sex of the defendant. The jury saw and heard the defendant as a witness in her own behalf. The charge of the learned judge who presided was clear and fair, and I see no good reason to interfere with the verdict. The fact that the principal witness for the people presided in the same county court in the trial of a case preceding this one at the same term I do not think was a circumstance which could have had any weight with the jury, nor is it legal cause for reversal.

I think the judgment should be affirmed. All concur, except MERWIN, J., who dissents.

---

(55 App. Div. 40.)

GOVERS v. BOARD OF SUP'RS OF WESTCHESTER COUNTY et al.

(Supreme Court, Appellate Division, Second Department. November 23, 1900.)

1. TOWNS—ESTABLISHMENT OF BOUNDARIES—POWERS OF BOARD OF SUPERVISORS.

Laws 1870, c. 782, provided that the boundary lines between the towns of New Rochelle and Pelham were thereby fixed in accordance with a certain designated map. Id. c. 361, was passed later, which conferred on the board of supervisors power to fix, establish, locate, or define disputed boundary lines between the towns in their county. This provision was re-enacted in Laws 1892, c. 686. In 1872 the supervisors of Pelham and New Rochelle had the boundary line as established by the legislature located by surveyors. *Held*, that the board of supervisors had jurisdiction of a proceeding brought in 1897 to define the correct line as established by the act of legislature, it being claimed that the line had previously been erroneously located.

2. SAME—REVIEW OF ACTION OF BOARD OF SUPERVISORS—ACTION BY TAXPAYERS.

Code Civ. Proc. § 1925, providing for an action by taxpayers to prevent the waste or injury of the estate, funds, or other property of any county, town, city, or incorporated village of the county, does not authorize an action against the board of supervisors for the purpose of reviewing their decision in locating boundary lines between towns as fixed by an act of the legislature; it not being shown that there was fraud or collusion, and the board having jurisdiction of such an action.

Appeal from trial term, Westchester county.

Action by Robert Govers against the board of supervisors of Westchester county and the town of Pelham. From a judgment in favor of defendants, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

J. Addison Young, for appellant.
Henry G. K. Heath, for respondents.

HIRSCHBERG, J. The plaintiff, as a taxpayer of the town of New Rochelle, in Westchester county, has sued the board of supervisors of said county and the town of Pelham for the purpose of obtaining a judgment declaring null and void an act of said board passed March 16, 1896, defining the boundary line between the towns of Pelham and New Rochelle. The action is brought under the provisions of the act for the protection of taxpayers (chapter 531, Laws 1881, as amended by chapter 673, Laws 1887, and chapter 301,

Laws 1892), and section 1925 of the Code of Civil Procedure, and the judgment prayed for includes the prohibition of the town of Pelham from exercising any acts of jurisdiction over about 50 acres of land which the plaintiff claims have been unlawfully taken from the town of New Rochelle and annexed to the town of Pelham by the official action of the board of supervisors complained of. It appears that the boundary line between these towns had been in dispute for many years. In 1870, by chapter 782 of the Laws of that year, the legislature enacted that:

"The boundary line dividing the towns of New Rochelle and Pelham, in the county of Westchester, being the northeast boundary of Pelham, and the southwest boundary of New Rochelle, is hereby fixed, established and settled in accordance with, and as laid down upon, the map made by Captain Bond, in the year seventeen hundred and eleven, and on file in the town clerk's office in the town of New Rochelle, and as laid down on a copy of the said map made by James Davenport, in seventeen hundred and ninety-eight, and now on file in the office of the state engineer and surveyor."

At the same session of the legislature and some days prior to the passage of this act, chapter 361 of the Laws of 1870 was enacted, conferring for the first time upon boards of supervisors the power "to fix, establish, locate and define disputed boundary lines between the several towns in their respective counties, by a resolution to be duly passed by a majority of all the members elected to such board." This provision was re-enacted in section 36 of the county law (chapter 686, Laws 1892), under the heading "Establishment of Disputed Lines." In the year 1872 the supervisors of the towns of Pelham and New Rochelle employed surveyors to run the line of the boundary as established by the legislature, and the line as located by such surveyors was marked by monuments, and a map of the survey filed in the office of the register of the county. It was admitted on the trial that this was done under the authority and by the direction of the towns, and that the work was accepted and paid for by them. The result arrived at by the surveyors appears to have been acquiesced in by both towns until the year 1897, when the town of Pelham objected to the line, claiming that it had been erroneously located, and applied, under section 36 of the county law, to the board of supervisors to define the correct line as established by the legislative act. Considerable evidence was received by the board of supervisors bearing on the question of the true location of the boundary line as laid down on Captain Bond's map and James Davenport's copy. It was conceded that the surveyors acting for the towns had not seen or used the Davenport copy in any way, and, if the result reached by the board of supervisors in adopting a different line from that of these surveyors were the subject of review upon the merits, the action of the board would be found to be supported by adequate proof.

The appellant insists, however, that the action of the board was wholly without jurisdiction, and this claim is based on the contention that the special act of the legislature establishing the boundary line in question repealed pro tanto the power previously conferred upon supervisors to fix disputed boundary lines, and that

section 36 of the county law was but a continuation of the prior law as so qualifiedly repealed, and not a new enactment. If there is any repeal of the act conferring the power upon supervisors to define the disputed line, it must be by implication resulting from a conflict or inconsistency. But there is no inconsistency involved. The act of the legislature establishing and settling the boundary line between the two towns did not purport to locate the line, or to declare its bounds, courses, and monuments. It fixed, established, and settled the line in accordance with certain maps, but it did not determine the actual physical location which would be in accordance with such maps. If that location was in dispute,—that is, if there was a dispute as to where the line laid down on those maps actually ran,—the power remained in the board of supervisors to "locate and define" it, by virtue of chapter 361 of the Laws of 1870, although they could only "locate and define" it as established and settled by the special act. And in the exercise of this power the board was required to adopt a resolution which should contain "the courses, distances and fixed monuments specified in such boundary line or lines, together with a map or survey thereof, with the courses, distances and fixed monuments referred to therein plainly and distinctly marked and indicated thereon." The location of the line in question undoubtedly required the exercise of skill and the examination of evidence in addition to that afforded by the maps in order to determine its whereabouts, and it would seem that, instead of being without jurisdiction because of conflict or inconsistency, the action of the board of supervisors was a necessary supplement to the act of the legislature, without which the latter would have been destitute of practical efficiency.

Having jurisdiction in the premises, and having acted in its exercise in good faith, without fraud or collusion, the conclusion reached by the board is not subject to review by the court in this action. If the action of the board is to be regarded as judicial in its nature, it could not be reviewed, except through the operation of some appropriate writ of review. If the action was legislative, as the appellant contends, then it was not such legislation as is within the contemplation of the taxpayers' act and section 1925 of the Code. In view of the adoption of a line by the towns in 1872, the action of the board in substituting a different line may have been unwise or even erroneous; but it would not be illegal within the meaning of the taxpayers' act, nor would the transfer of 50 acres of land from the town of New Rochelle to the town of Pelham, under the circumstances disclosed by the record, free from any taint of fraud, collusion, or corruption, constitute waste or injury to, or of the property of, the former town, within the meaning of that act or of the Code. In Talcott v. City of Buffalo, 125 N. Y. 280, 26 N. E. 263, it was held that the right of a taxpayer to sue public officers pursuant to the legislation designed to prevent illegal official acts or the waste of public funds is confined to cases "where the acts complained of are without power, or where corruption, fraud, or bad faith amounting to fraud, is charged." In Ziegler v. Chapin, 126 N. Y. 342, 27 N. E. 471, it was declared that the suit authorized by section 1925

of the Code is one which a taxpayer may bring against a public officer "because of some fraud or bad faith on his part, or to restrain some illegal action." See, also, Osterhoudt v. Rigney, 98 N. Y. 222, where it was held that an excessive allowance by a board of town audit in a case within its jurisdiction, and in the absence of fraud or collusion, does not constitute waste or injury to the property of the town, within the meaning of the taxpayers' act, and that an erroneous conclusion cannot be reviewed in the action authorized by such act. The appellant cites People ex rel. Trustees of Village of Jamaica v. Board of Sup'rs of Queens Co., 131 N. Y. 468, 30 N. E. 488, and People ex rel. O'Connor v. Same, 153 N. Y. 370, 47 N. E. 790, as authorities for the maintenance of this action. In the former case the action of the supervisors providing for the raising of $400,000 by bonding the town was assailed as illegal and unauthorized by law, and was unquestionably within the mischief which the taxpayers' act was designed to remedy. In the O'Connor Case the action of the board of supervisors complained of was in establishing a fire district in a town; and, while the court intimated that a taxpayers' action was the appropriate remedy for a review of the proceedings, it was manifest that the validity of the action of the board was attacked by the relator. It was an official act, which was inherently illegal, and not merely erroneous, because of errors of judgment. In the case at bar the action of the board of supervisors was not invalid, illegal, or without jurisdiction. It was free from fraud, collusion, or corruption, and resulted in no waste of public funds or property, and no error of judgment on the part of the board in arriving at its determination, if any existed, can be made the subject of review in a taxpayers' action. The judgment should be affirmed.

Judgment affirmed, with costs. All concur.