## ANNA E. TALCOTT et al., Respondents, *v.* THE CITY OF BUFFALO et al., Appellants.

The provision of the Code of Civil Procedure (§ 1925), authorizing an action by a taxpayer to prevent "waste of or injury to" the property of a municipality, as supplemented by the acts of 1881 (Chap. 531, Laws of 1881) and 1887 (Chap. 673, Laws of 1887), is confined to cases] where the acts complained of are without power, or where corruption, fraud or bad faith, amounting to fraud, is charged; the words "waste" and "injury" include only illegal, wrongful or dishonest illegal action. (PECKHAM, J., dissenting.)

An action, by a taxpayer of a municipality, to restrain the governing body thereof from official action, clearly within its power and discretion and without any charge or allegation of fraud, collusion, corruption or bad faith, cannot be maintained, although it be averred that such intended action is unwise and without due regard to economy. (PECKHAM, J., dissenting.)

An allegation in a complaint that a certain official act by the common council of a city is illegal, is not an averment of an issuable fact, but simply the statement of a legal conclusion; and so, is not admitted by a demurrer to the complaint.

In an action, by a taxpayer of a city, to restrain the governing authorities from substituting electric light for gas in one of its streets, the complaint set forth, in substance, the action of the common council prior to 1885, which resulted in suitably and properly lighting the street at a large expense which was paid by the property owners benefited; it then alleged that in May, 1888, the common council passed a resolution, over the mayor's veto, providing for the substitution of electric lights for gas in compliance with a petition, by what was claimed to be a majority of the inhabitants on the street; that subsequently a remonstrance signed by what was claimed to be an actual majority of the taxpayers both in number and value of property upon the street, was presented to but disregarded by the common council; that in pursuance of said resolution the proper officers had entered into a contract with an electric light company which was proceeding to perform the same; that the price claimed by said company was exhorbitant and the expense of lighting the street would be largely increased, without any additional convenience or benefit to the city or property owners; that the official acts of the common council and other officers in the matter were illegal. There was no averment that the common council did not have, under the charter of the city, power to provide for the regulation and lighting of the streets as in its discretion might seem best, or charge of fraudulent or corrupt action by the authorities, or that any dishonest or unlawful end was in view. A

demurrer to the complaint, as not stating a cause of action, was over-ruled. *Held* (Peckham, J., dissenting), error. *Talcott* v. *City of Buffalo* (57 Hun, 43), reversed.

(Argued December 15, 1890; decided January 13, 1891.)

Appeal from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made the first Tuesday of June, 1890, which affirmed an inter-locutory judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term overruling a demurrer to the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Philip A. Laing* for appellants. The acts complained of are not illegal official acts. (Laws of 1887, chap. 673, § 1; Laws of 1870, chap. 519, § 1; *Sank* v. *City of Philadelphia*, 3 Phil. 117; *White* v. *City of Buffalo*, 1 Sheld. 180.) The common council having jurisdiction and having within its statute authority, determined to light the avenue in question by electricity, and there being no allegation that such deter-mination was influenced by any improper motives, a cause of action under the Taxpayers Act is not stated, and the judg-ment of the trial court restraining its acts should not be per-mitted to stand. (*Starin* v. *Edson*, 112 N. Y. 212, 213, 214; *Osterhout* v. *Rigney*, 98 id. 231, 232; *People ex rel. Negus* v. *Dwyer*, 90 id. 410; *Negus* v. *City of Brooklyn*, 10 Abb. [N. C.] 182, 183; *Standirt* v. *Burtis*, 46 Hun, 82–85; *Oster-hout* v. *Hyland*, 27 id. 168–179; *Schanck* v. *Mayor, etc.*, 69 N. Y. 444; *Kimball* v. *Hewitt*, 22 N. Y. S. R. 311; *In re M. M. Square*, 2 Hill, 14; *Hartwell* v. *Armstrong*, 19 Barb. 166; *Guest* v. *City of Brooklyn*, 69 N. Y. 506; *People ex rel.* v. *Mayor, etc.*, 2 Hill, 1; *Phelps* v. *City of Water-town*, 61 Barb. 121; *Thurston* v. *City of Elmira*, 10 Abb. [N. S.] 119; *Ayers* v. *Lawrence*, 59 N. Y. 195; *Clark* v. *Vil. of Dunkirk*, 12 Hun, 186; *Roosevelt* v. *Draper*, 23 N. Y. 318; *People* v. *Ingersol*, 58 id. 1; Dillon on Mun.

Corp. §§ 914, 915, 920, 921; *Hull* v. *Ely*, 2 Abb. [N. C.] 440.) The allegations to the effect that the poles and appliances to be erected in lighting the avenue with electricity are unsightly, and will depreciate the value of certain property, are of no avail in an action under the Taxpayers Act, as that act intends to redress a grievance common to all taxpayers. (*People ex rel.* v. *Thompson*, 32 Hun, 93–97.) The state and city had the power to authorize the erection of the poles and apparatus for lighting the city, and they have duly exercised such power. (*In re T. & H. E. Co.*, 7 N. Y. Supp. 716; *People* v. *M. T. Co.*, 31 Hun, 597; Laws of 1879, chap. 512, § 2; Laws of 1882, chap. 73; R. S. [8th ed.] 2083.) The written proposal of the electric light company, and the resolution of the common council constituted a contract, and the company has entered upon the performance of the same, and the court cannot restrain the execution thereof. (*Hersee* v. *City of Buffalo*, 1 Sheld. 445; *Argus Co.* v. *Mayor, etc.*, 55 N. Y. 495; *Ottendorfer* v. *Fortunato*, 24 J. & S. 495.) The city of Buffalo is not a necessary party to this action. The statute does not authorize a prosecution against the municipality itself. (Laws of 1887, chap. 673, § 1; *People* v. *Myers*, 50 Hun, 479.) A cause of action is not stated against the twenty-six individuals. The statute contemplates that officials shall be sued as such, so that the judgment shall bind them in their official capacity, since it is official action that is sought to be enjoined, but here they are sued as individuals. (Laws of 1887, chap. 673, § 1; *Bennett* v. *Whitney*, 94 N. Y. 302.) The common council, as a body, was a necessary party. (Laws of 1870, chap. 519, § 1.)

*Norris Morey* for respondents. Under the Taxpayers Act (§ 1925 of the Code of Civil Procedure, as supplemented by chap. 531, Laws of 1881, amended by chap. 673, Laws of 1887), the real party in interest, if waste and injury are about to be done, has the right to maintain an action for its prevention, and if already done, to compel the restoration of what has been taken away. (*Roosevelt* v. *Draper*, 23 N. Y. 318;

*Ayers* v. *Lawrence*, 59 id. 192–195 ; *Metzger* v. *A. & A. R. R. Co.*, 79 id. 174 ; *Osterhoudt* v. *Rigney*, 98 id. 231 ; Laws of 1872, chap. 171, § 1 ; *Warren* v. *Baldwin*, 105 N. Y. 534 ; *Bird* v. *Mayor, etc.*, 33 Hun, 396 ; *Latham* v. *Richards*, 12 id. 360 ; *Winkler* v. *City of Buffalo*, 22 Abb. [N. C.] 80 ; 2 Williams on Ex. 1629 ; Laws of 1870, chap. 519, § 1.)   This action is brought against the proper parties.   (Code Civ. Pro. §§ 447, 452 ; *Osterhoudt* v. *Bd. of Suprs.*, 98 N. Y. 239 ; *Standart* v. *Burtis*, 15 N. Y. S. R. 145.)

O'BRIEN, J.   The plaintiff, a resident and taxpayer of the city of Buffalo, seeks in this action to restrain the governing authorities of that city from substituting electric street lighting for that of gas, in Bouck avenue, between Niagara street and Chapin place.   The defendants demurred to the complaint on the ground, among others, that a cause of action was not stated.   The demurrer was overruled by the Special Term, and this decision was affirmed at the General Term.   As the other ground of demurrer was not discussed in the courts below, as presenting any substantial question, and as it seems to us to be without merit, further consideration of it is not needful.   The complaint states at length the action of the common council at various times prior to the year 1885, which resulted in placing in this avenue suitable and proper gas lamps, mains and service pipe, and in suitably and properly lighting the avenue, at a considerable expense which was ultimately paid by the property owners in the locality who were benefited thereby.   In May, 1888, as is alleged, the common council passed a resolution providing for the substitution of electric lighting in place of gas, in this avenue, in compliance with the prayer of a petition by what was claimed to be a majority of the inhabitants on the street.   That subsequently a remonstrance in writing, containing the names of what is claimed to be an actual majority of the taxpayers, both in number and value of property upon the avenue, was presented to the common council against the change, but was disregarded. It is then alleged that the mayor, in the exercise of his powers

and duties, vetoed the resolution, but it was subsequently passed, notwithstanding this veto, by the common council. It is also alleged that, in pursuance of this resolution, the proper officers of the city had taken proceedings to enter into a contract between the city and an electric lighting company; that this company was proceeding to erect the necessary poles for electric lighting in the streets to the damage of private property therein; that it was about to remove the gas lamps, mains and service pipe, the cost of which would be lost to the city; that the expense of lighting the street by electricity would be greater to the property owners than gas, by a considerable sum which is named, without conferring any additional convenience or benefit, either to the city or the local property owners; that in consequence of a combination between the electric light companies, the price charged for such lighting was exhorbitant and much larger than paid by neighboring municipalities; and that the official acts of the common council and other officers to substitute this method of lighting the avenue for gas were illegal. The relief demanded was that the authorities be restrained from making the contract, or executing the resolution, or changing the present method of lighting, requiring the old method to be restored, so far as it had been changed; that an account be had in regard to the expense or damage which the city had or might incur in consequence of the proceedings to change the manner of lighting the avenue, and that the individual members of the common council, who voted for the resolution substituting electricity for gas, be adjudged to pay the same, with the costs of the action.

The facts stated in the complaint, and which are well pleaded, must be deemed to be admitted by the demurrer, but the allegation that the proceedings of the common council, looking to a change in the manner of lighting the avenue, were illegal official acts, was not the averment of an issuable fact, but the statement of a legal conclusion, and, therefore, is not admitted. It is not seriously urged in the argument for the plaintiff, or in the decisions of the courts below, that the common council did not have, under the charter of the city, full power to pro-

vide for the regulation and lighting of the streets and avenues in such manner and to such extent as, in the exercise of its discretion, might be deemed most advantageous to the city. The complaint contains no charge that the action of the authorities was fraudulent or corrupt, or that any dishonest or unlawful end was in view, or was sought to be accomplished. The most that can fairly be said to be charged in the complaint is that the authorities of the city are using the power conferred by the charter unwisely and without due regard to economy. The question for our determination in this case, therefore, is whether a taxpayer can maintain an action to restrain the governing body in a city from official action, within its power and discretion and without any charge or allegation of fraud, collusion, corruption or bad faith. The decision of this question must depend upon the construction to be given to the legislation passed in this state from time to time, authorizing and regulating actions of this character. The first statute that gave the right to a taxpayer to interfere by action in the conduct of municipal affairs was chapter 161 of the Laws of 1872. The title of the act was "An act for the protection of taxpayers against the frauds, embezzlements and wrongful acts of public officers and agents," which, no doubt, expressed the general scope and purpose of the law. In a single section, authority was given to any person residing in the county, town or municipal corporation, assessed for and liable to pay taxes therein, or who had paid taxes therein within one year previous, to maintain an action against all officers, agents, commissioners and other persons acting for or in behalf of such county, town or municipal corporation, to prevent waste or injury to any property, funds or estate of such county, town or municipal corporation. That this legislation was aimed at " frauds, embezzlements and wrongful acts of public officers and agents," as indicated by the title, is also clear when the causes that moved the legislature to its enactment and which are matters of public history are considered. The origin of the statute is to be found in certain well-known fraudulent and corrupt acts on the part of officers and com--

missioners in the city and county of New York, whereby public funds were abstracted from the treasury, mainly by the audit and allowance of fictitious claims and corrupt contracts and the proceeds converted to the individual benefit and use of these officers and agents. The terms "waste" and "injury" used in this statute comprehended only illegal, wrongful or dishonest official acts, and were not intended to subject the official action of boards, officers or municipal bodies acting within the limits of their jurisdiction and discretion, but which some taxpayer might conceive to be unwise, improvident or based on errors of judgment, to the supervision of the judicial tribunals. It is believed that no action was ever maintained under this statute with the sanction of this court, without some proof or allegation that the official act or proceeding complained of was without power or was tainted by corruption or fraud. This act was incorporated into and became section 1925 of the Code of Civil Procedure, and this provision of the Code has been supplemented by chapter 531 of the Laws of 1881, and chapter 673 of the Laws of 1887. The general powers conferred upon the courts by the act of 1872, as incorporated into the Code, were not enlarged, but rather restricted and regulated by the legislation of 1881 and 1887. It was provided in these acts that the plaintiff, previous to the commencement of such action, should give a bond to be approved by a justice of the Supreme Court or county judge in such penalty as the judge might direct, in no case less than $250, conditioned that the plaintiff, in case the action failed, would pay all costs awarded to the defendant. If an injunction was granted, the bond might also provide for the payment of the damages arising therefrom to the party entitled to the money, the auditing, allowing or paying of which was enjoined, if it was ultimately held that the plaintiff was not entitled to such injunction. The statute, as amended by the act of 1881, then, for the first time, specifically enumerates certain official acts, as well as the general character of the claims, to which it is but reasonable to suppose the new remedy that the legislature had in view was

intended to apply. The language is, "In case the waste or injury complained of consists in any board, officer or agent of any county, town, village or municipal corporation, by collusion or otherwise, contracting, auditing, allowing or paying, or conniving at the contracting, audit, allowance or payment of any fraudulent, illegal, unjust or inequitable claims, demands or expenses, or any item or part thereof against or by, such county, town, village or municipal corporation, or by permitting a judgment or judgments to be recovered against such county, town, village or municipal corporation, or against himself in his official capacity, either by default or without the interposition and proper presentation of any existing legal or equitable defenses, the court may in its discretion prohibit the payment or collection of any such claims, demands, expenses or judgments, in whole or in part, or may enforce the restitution thereof, if heretofore or hereafter paid or collected, by the person or party heretofore or hereafter receiving the same, and also may in its discretion adjudge and declare the colluding official personally responsible therefor and out of his property provide for the collection or repayment thereof, so as to indemnify and save harmless, the said county, town, village or municipal corporation from a part or the whole thereof, and in the case of a judgment, the court may in its discretion vacate, set aside and open said judgment, with leave and direction for the defendant therein to interpose and enforce any existing legal or equitable defense therein, under the direction of such person as the court may in its judgment or order designate and appoint." In chapter 673 of the Laws of 1887, entitled "An act to amend chapter 531 of the Laws of 1881," entitled "An act for the protection of taxpayers," the language of the act, which it amended, was repeated, with some additional provisions, only one of which it is important to notice. At the end of the section the following language was inserted : " The provisions of this act shall apply as well to those cases in which the body, board, officer, agent, commissioner, or other person above named has not, as to those in which it or he has jurisdiction over the subject-matter of its action." These

words, we think, did not enlarge the remedy given by the statute, so as to include official acts or claims within the power and discretion of the officers mentioned, not alleged to be fraudulent, collusive, corrupt or otherwise infected with the vices specified in the preceding part of the section. They were aimed at dishonest or wrongful acts on the part of public officers or bodies, and of the same general character as those enumerated and specified, whether they were within the jurisdiction of such officers or bodies or not. We have referred to the origin of this statute, under which the action is brought, the title of the act of 1872, and the language used by the legislature, subsequently, when re-enacting it in 1881 and 1887, for the purpose of ascertaining whether it was intended to authorize a taxpayer to maintain an action against the members of the common council in a city, and the administrative officers thereof, for the purpose of restraining officials acting within the limits and scope of their powers and discretion, such as is alleged in the complaint in this action, and we are of the opinion that it was not. Full force and effect can be given to the statute by confining it to a case where the acts complained of are without power, or where corruption, fraud or bad faith, amounting to fraud, is charged. Any other construction would subject the discretionary action of all local officers and municipal bodies to review by the courts at the suit of the taxpayers, a result which would burden the courts with litigation, without increasing the efficiency of local administration. Whatever evils may exist in the government of cities that are due to mistakes, errors of judgment or the lack of intelligent appreciation of official duty, must necessarily be temporary, compaired with the mischief and inconvenience which judicial supervision, in all cases, would ultimately produce. Local officers are elected or appointed for such brief periods that frequent opportunity is afforded to the public and the taxpayers interested in their official acts, to change them and substitute others in their place. There is a broad field for the operation of the statute without extending it to the official action of the common council in regard to the choice

of methods for lighting a city street, a construction which, it seems to us, would greatly impair the right of local self-government. (*People ex rel. Negus* v. *Dwyer*, 90 N. Y. 402; *Osterhoudt* v. *Rigney*, 98 id. 222.)

The order and judgment of the General and Special Terms should be reversed and the demurrer sustained, with costs in all the courts.

Peckham, J. (dissenting).    I dissent from the principles laid down in the opinion of Judge O'Brien.

Under the statute as it now reads, I think the court has jurisdiction to enjoin the performance of an act by a public officer of the kind mentioned therein, if it be of such a character as to necessarily result in a plain, bald, useless waste of the property or funds of the public.    The act must be such that there can be no fair question, in the judgment of reasonable men, as to its character.    It must be plainly and beyond all fair controversy wasteful; a mere squandering of public funds.

In such case I do not think it necessary to allege or prove that a corrupt or fraudulent intent accompanies the act.

Jurisdiction in the courts to enjoin such conduct on the part of public officers, who are merely trustees for the public, would be, in my judgment, exceedingly healthful, and I think no strained construction of the statute is necessary to hold that such jurisdiction has been granted by it.

Perhaps the case made out by this plaintiff does not quite come up to the standard required, but as the opinion of the court is founded upon the idea that the statute requires a corrupt or fraudulent intent to accompany the act, I desire to express my dissent from that construction.

The construction I contend for would not result in the mere substitution of the judgment of the court for that of the body to which the law confided the administration of such matters. If it were possible for fair-minded men to differ in regard to the character or policy of the proposed act, then the judgment of the officers should prevail.    If, on the contrary, the proposed act were of the character I have already described, then

the court should have power to enjoin it, and I believe the statute confers such power. The right, at some future time, to elect other officers in place of the reckless ones who have already wasted the moneys of the public, affords no redress for the wrong already done, and experience has shown that it has the very slightest deterrent effect.

All concur with O'BRIEN, J., except PECKHAM, J., dissenting.

Judgment reversed.