IN THE MATTER OF THE APPLICATION OF ANDREW D. BAIRD
AND OTHERS, RELATORS, APPELLANTS, FOR A WRIT OF MANDAMUS
DIRECTED TO THE SUPERVISORS OF THE COUNTY OF
KINGS, RESPONDENTS.

*Boards of supervisors — dividing assembly districts after an apportionment — the
districts need not contain an equal number of inhabitants — wards of Brooklyn
may be divided.*

The State Constitution (art. 3, § 5), adopted in November, 1874, does not require
the supervisors of counties, in making an apportionment of members of
assembly in the several counties of the State, to divide their county into
assembly districts which shall contain, as nearly as may be, an equal number of
inhabitants.

The matter of such division is left to the discretion of the supervisors, the legislature
assuming that they would secure equality.

Section 5 (*supra*) provides that "no town shall be divided in the formation of
assembly districts." The charter of the city of Brooklyn provides that "the
said wards shall be considered, and are hereby declared, to be towns of the
county of Kings," but, beyond the right to elect a supervisor and a constable,
these wards have no powers of any nature analagous to those of ordinary towns.

*Held*, that the wards of Brooklyn were not towns within the purview of section 5,
and were subject to division by the supervisors in erecting assembly districts.

That the fact that more electors voted for an assemblyman in one district than for
such an officer in another district, did not impair the right of suffrage nor par-
tially disfranchise any of the electors.

That if all electors voted and the proper number, in the aggregate, of assemblymen
were chosen, all electors were represented and the end sought by the Constitu-
tion was secured.

That, in dividing a county into assembly districts, a board of supervisors was
performing a duty involving large discretion and bordering upon judicial power.

That, where the duty had been performed and the discretion had been exercised,
the action was final, and that an unwise exercise of such discretion could not be
altered by *mandamus* or reviewed in any manner.

APPEAL by the petitioners and relators, Andrew D. Baird, Owen
E. Houghton, Martin S. Allen, Frank B. Otis, Charles Pierce,
Edmund C. Fisher, Jesse Johnson and William C. Bryant, from an
order of the Supreme Court, dated on the 1st day of September,
1892, denying a motion for a writ of *mandamus* commanding the
supervisors of the county of Kings forthwith to convene and divide
the county of Kings into assembly districts in the manner and form
required by the Constitution and statutes of the State of New York.

*F. E. Barnard,* for the relators.

*John B. Meyenborg,* for supervisors, respondents.

DYKMAN, J.:

This is an appeal from an order of the Special Term which denied an application for a peremptory writ of *mandamus,* commanding the members of the board of supervisors to convene and divide the county of Kings into assembly districts in the manner required by the Constitution and the statutes of the State.

It appears, from the papers presented by the relators, that the defendants met on the nineteenth day of July and divided the county of Kings into eighteen assembly districts, but their action is challenged because the assembly districts made by them are unequal in population and are not in accordance with the requirements of the Constitution and partially disfranchise a portion of the electors, and that towns were divided in the formation of the districts.

No attack is made upon the enumeration or the statute making the apportionment of assemblymen to the county of Kings.

The provision of the Constitution involved is as follows:

" The assembly shall consist of one hundred and twenty-eight members, elected for one year. The members of assembly shall be apportioned among the several counties of the State by the legislature, as nearly as may be, according to the number of their respective inhabitants, excluding aliens, and shall be chosen by single districts.

" The assembly districts shall remain as at present organized until after the enumeration of the inhabitants of the State in the year eighteen hundred and seventy-five.

" The legislature, at its first session after the return of every enumeration, shall apportion the members of assembly among the several counties of the State in manner aforesaid, and the board of supervisors in such counties as may be entitled, under such apportionment, to more than one member, except the city and county of New York, and in said city and county the board of aldermen of said city, shall assemble at such times as the legislature making such apportionment shall prescribe and divide their respective counties into assembly districts, each of which districts shall consist of convenient and contiguous territory, equal to the number of members of assembly to which such counties shall be entitled, and

shall cause to be filed in the offices of the Secretary of State, and the clerks of their respective counties, a description of such districts, specifying the number of each district, and the population thereof, according to the last preceding enumeration, as near as can be ascertained, and the apportionment and districts shall remain unaltered until another enumeration shall be made as herein provided. No town shall be divided in the formation of assembly districts."

There is no requirement for an arrangement of assembly districts which shall contain an equal number of inhabitants, and the silence upon that subject is more significant, because the section, as it stood previous to amendment, did contain such a requirement in the following language :

"Each assembly district shall contain as nearly as may be an equal number of inhabitants."

The reason of the omission obviously was, that the board of supervisors were invested with full power to make the divisions in the exercise of their discretion, and clothed with full authority for that purpose, and it would not be assumed that they would fail to secure equality.

The appellants claim also that towns have been divided in the construction of the election districts in violation of the constitutional interdiction, but the position is sought to be sustained by inference drawn from the contention that the wards of the city are towns of the county, and so fall within the inhibition against division.

Further, in this same connection, it may as well be stated that the boundaries of the city wards were changed by the common council on the 11th day of July, 1892, pursuant to chapter 455 of the Laws of 1892, and in the construction of the assembly districts none of the wards, as so changed and constituted, were divided.

As to that, however, the appellants maintain that the statute of 1892 did not confer upon the common council the power to change the wards because they were towns of the county, and the power to alter them could not be delegated to the common council.

It will conduce to brevity and perspicuity to determine first whether the wards of the city are towns of the county within the meaning of the constitutional prohibition against division, for, if they are not such, then both arguments are faulty and will not prevail.

The argument of the appellants is based upon the provision of the Constitution which forbids the division of towns in the formation of election districts (§ 5, art. 3), and the provision of the statute that " the said wards shall be considered and are hereby declared to be towns of the county of Kings." (Laws of 1888, chap. 583, § 28.)

Towns, as political organizations, were formed early in the New England settlement with governments vested in a town meeting, and when that method became cumbrous, officers were chosen to administer the affairs of the town, and that was the mode from the first in the State of New York, and now they are practically corporations.

The people of the town elect their own officers to administer their own affairs independently of all other jurisdiction. The towns and their town meetings have ever been deemed of paramount importance in the preservation of local self government, and the great safeguard against centralized despotism, because they maintain inviolability in the parts without a sacrifice to the center.

The legislature has clothed the wards with no powers of local self government which are possessed and exercised by towns. They can neither incur corporate obligations, nor sue or be sued, nor exercise any of the functions of a corporation. Excepting supervisor and constable, they elect no officer whose duties are analogous to those of town officers. They possess none of the powers, and are subject to none of the liabilities of towns.

Perhaps the most distinguishing feature is the absence of the town meeting, which is essential to the autonomy of the towns. None of the statutes pertaining to towns have force or application to city wards. We think, therefore, the wards of the city are not towns, within the purview of the Constitution and statutes under consideration, and that, consequently, there is no prohibition against the division of wards in the formation of assembly districts in Kings county.

If it had been the intention of the legislature to transfigure the wards of the city into towns, in all that term implies, and clothe them with the powers and bestow upon them the privileges of county towns, it would have been easy to do so by the use of appropriate language, and in the absence of words indicative of such design, we cannot infer such intention.

For what purpose a city ward is to be deemed a town, except for the election of a supervisor and constables, we cannot determine,

but it is quite plainly a town in a very limited sense, and not within the constitutional provision invoked by the relators.

We conclude, therefore, that the wards are not towns in any sense which exempts them from division.

Let us pause for a moment to examine the contention of the relators, that the electors are partially disfranchised by the action of the defendants. The exercise of the elective franchise has been called a right by some and a privilege by others, but whichever it may be it accrues in this way.

In this country, all political power is vested in the people, but, as the exercise of that power by the people themselves is impracticable, it must be exerted by representatives under an organized government representing the collected will of the people, and as they are the agents of the people the right to a voice in their selection is the right of every qualified elector, and is his portion of political power. It is the mode by which power eminates from its source and is delegated to agents; that delegation of power is called suffrage, and if the right of suffrage is insured to every qualified elector, his rights are protected because they have that extent, and no more.

The right of suffrage is limited, because the people limit themselves by their Constitution, which regulates and restricts the right. It must be exercised at a specified time and place, and in a particular manner by certain persons, and the enforcement of such limitations and restrictions is not disfranchisement in any legal or constitutional sense. If more electors vote for a representative in one district than in another, that impairs no right of suffrage. The aggregate number is chosen, and that secures the important aim. In the formation of government it is important that all should be represented, and that end is secured by the Constitution. This view discloses no disfranchisement by the action under review.

Beyond the questions discussed, however, there is another view. The board of supervisors was required to assemble and divide the county of Kings into eighteen assembly districts of convenient and contiguous territory, and file a description of the same. The performance of the duty so imposed upon the board required the exercise of large discretion bordering upon judicial power. The duty has been performed and the discretion has been exercised, and it is not made subject to any judicial control.

It is the office of a writ of *mandamus* to compel action by inferior bodies and tribunals, but it cannot be sent to dictate any particular action. It is not a remedy for erroneous determinations or decisions.

" Where a subordinate body is vested with the power to determine a question of fact, the duty is judicial, and it cannot be compelled by *mandamus* to decide in any particular way, however clearly it may be made to appear what the decision ought to be." (*People ex rel. Francis* v. *Common Council*, 78 N. Y., 33.)

Where, as in this case, a particular duty is addressed to the discretion and judgment of a particular body, in a case where the decision, when made, must be conclusive, and subject to no appeal or review, the rule must prevail which makes the decision final. (Cooley on Const. Lim., 52; *Abrams* v. *Town Auditors*, 10 N. Y. St. Rep., 378; *Talcott* v. *Buffalo*, 125 N. Y., 280.)

Finality must be reached somewhere. The machinery of government will not be arrested by the courts until all possible errors are subjected to judicial review. Its exigencies will admit of no such delay, and the writ of *mandamus* cannot be allowed to obstruct the movement of governmental action.

The board of supervisors has discharged the duties imposed upon it by the fundamental law, and, as if to insure finality to such action, and, as an admonition against judicial interference, the same great law which directs the action declares in the same section that " the apportionment and districts shall remain unaltered until another enumeration shall be made as herein provided." Any other course would subject the discretionary action of all local officers and bodies to judicial review against well-settled principles.

The Constitution requires the members of assembly to be apportioned among the counties, " as nearly as may be," according to their inhabitants, excluding aliens; and where a county is entitled to more than one member under such apportionment, the board of supervisors is required to divide their counties into assembly districts, to consist of convenient and contiguous territory, equal to the number of members to which the county is entitled.

In such division, contiguity and convenience are to be attained and irregularity in territory and inequality in numbers are unavoidable. It cannot be made according to mathematical rules.

The constitutional requirement obviously implies the exercise of

discretion by the boards of supervisors and not by the courts. If the courts can interfere and set aside the work of the boards because they have exerted their discretion unwisely, then they must exercise their own discretion and substitute their judgment for that of the boards in determining the division to be made, and so, in effect, wrest the authority from the body to which it was delegated by the fundamental law.

In the division of power among the great departments of government in this State the legislative power is vested in the senate and assembly, and the executive power is vested in the governor, and, although it is not so expressly declared by the constitution, it is yet a well recognized principle that the judicial power has been committed to the judiciary.

Each of these powers is independent of the other, a legislative discretion is no more subject to judicial review or control than a judicial discretion is subject to legislative control. Both are independent in their sphere and responsible to the people only for the manner in which they discharge their duties. It is important, therefore, that each should confine itself within the bounds of its legitimate authority.

In no view, therefore, can the relators succeed on this appeal, and the order should be affirmed, with ten dollars costs and disbursements.

BARNARD, P. J., and PRATT, J., concurred.

Order denying writ of *mandamus* affirmed, with costs.