(96 App. Div. 458.)

### ERIE R. CO. v. CITY OF BUFFALO et al.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1904.)

1. MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — DISCRETION OF OFFI-CIALS—RESTRAINT—TAXPAYERS' SUITS.

Under Code Civ. Proc. § 1925, providing that actions to prevent waste or injury to the funds of a county or municipal corporation may be brought by a taxpayer, the essence of the action is fraud on the part of a public official, or some unlawful action which is sought to be prohibited; and such an action is not authorized against grade crossing commissioners, who, by Laws 1892, p. 735, c. 353, § 7, are vested with plenary power to contract with railroads for the abolition of grade crossings in a certain city, and are authorized to enforce the execution of the plans adopted, and to determine when the different parts of the work are to be done, merely because they err in matters of judgment, or make improvident expenditures, by contracting for the performance of the work at a time when prices of labor and material are high, so long as they act in good faith and within the purview of their authority.

2. SAME—BREACH OF AGREEMENT.

The fact that the proposed action of the grade crossing commissioners will result in the violation of their agreement with the railroad affected by the proposed improvement will not afford ground for such a suit, either at the instance of any taxpayer in general, or the railroad in particular which has suffered by reason of such breach, both as a party to the contract, and as a taxpayer compelled to contribute toward the expense of the improvement.

3. SAME.

The fact that the action of the commissioners in violating their contract will preclude a recovery from the railroad of its proportion of the cost of the improvement, and enhance the cost of the work to the taxpayer, is not ground for such suit by him.

4. SAME—ADEQUATE LEGAL REMEDY.

For a violation of a contract with a railroad by grade crossing commissioners, who, by Laws 1892, p. 735, c. 353, § 7, are empowered to contract with railroads for the abolition of grade crossings, the railroad has an adequate remedy at law, by resisting payment for its share of the improvement when sued therefor, and it cannot maintain an action in equity to restrain the letting of the contract for the improvement.

Williams, J., dissenting.

Appeal from Special Term, Erie County.

Action by the Erie Railroad Company against the city of Buffalo and others. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

The appointment of the grade crossing commission and the general plan for the elimination of crossings at grade over the railroads in the streets of the city of Buffalo are contained in chapter 345, p. 601, of the Laws of 1888. By this act and the amendment passed in 1892 (page 735, c. 353, § 7) the commissioners were authorized to enter into a contract with any railroad company to abolish these obstructions, and, in accordance with a comprehensive plan already devised and agreed upon, the act provided for the apportionment of the cost of any proposed improvement between the city and the contracting railroad company. The grade crossing commissioners are vested with plenary power (Laws 1892, p. 735, c. 353, § 7) to carry out the scheme contemplated by the act. "They shall enforce the execution of the plans adopted by them, by the railroad companies affected by them and by the city, and shall have power from time to time, to determine at what time and in what order the different portions of the work shall be done." And again: "They may make contracts on behalf of the city with any railroad company or companies

to carry out the purpose of this act." In fact, the whole performance of the work, including the determination of the character of the proposed improvement, is given to these commissioners.

The plaintiff is a steam railroad company operating its lines in said city; owning valuable property therein, and contributing to the tax levies annually more than $80,000. On the 8th day of February, 1896, the said grade crossing commissioners, in the execution of the plan for regulating crossings at grade, entered into a written agreement with the plaintiff pertaining to the several streets of the city crossed by its tracks. The eleventh paragraph of said agreement, so far as pertinent, is as follows:

"It is agreed that all the work described in the Section of the General Plan under the heading 'Perry Street-Erie R. R.,' as shown on Detail Plan No. 8, shall not be undertaken by the City or Company for the present, but that the consideration thereof shall be deferred until the work on the other streets is finished  *  *  *  and until it shall be determined by two-thirds of the commissioners that the construction of said work is necessary."

At the time of the commencement of this action the subway at Williams street and the footbridge at Fulton street, and each of which was "work on the other streets" referred to in said eleventh paragraph, had not been commenced. The viaduct at Van Rensselaer street, also referred to, was unfinished at the time of the commencement of the action, but was completed before the decision was rendered. The contract mentioned apportioned the cost of the improvement between the city and the plaintiff. Such cost was first to be borne by the city, and its bonds were to be sold at public auction, after a stipulated manner and time of advertising, to the highest bidder therefor, to provide a fund to meet such obligations. The plaintiff was to be credited for its share of whatever premium was received on any sale of said bonds. The company was to pay its portion of the cost of the improvement to the city in 20 equal, annual installments, with the same rate of interest as said bonds bore. "Contrary to the provisions of said agreement," in 1902 the said commissioners advertised for bids for the construction of a viaduct over the plaintiff's tracks in Perry street; and in March, 1903, a resolution was duly passed, directing "that the work shall now be done." Bids were received, and the contract let to the lowest bidder, for $150,203.50. The aliquot portion of which was ultimately chargeable to the plaintiff by its agreement was $109,806.57, and the bonds were subsequently sold at a premium of .00113, which was an "unusually low price." The cost of the material and labor at the time of such bidding was "unusually high," and later said viaduct could have been built "for a considerable reduction." This action was commenced by the plaintiff, as a taxpayer, pursuant to section 1925 of the Code of Civil Procedure, to restrain the defendants from taking any steps toward the letting of any contract for the carrying on of said work, and from raising any funds to pay therefor.

The facts above mentioned are fully set out in the complaint, and have been found by the trial court in its decision; but the complaint was dismissed upon the ground that the acts of the defendants "will not constitute and warrant a fraudulent waste of public funds," and that the plaintiff has an adequate remedy at law.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

William L. Marcy, for appellant.
Spencer Clinton, for respondents.

SPRING, J. Section 1925 of the Code of Civil Procedure permits an action to be maintained against a municipal body or its agent by a taxpayer thereof to prevent waste of the property of such municipality. The essence of the action is the fraud or bad faith of the public official, or some unlawful action which is sought to be prohibited. Talcott v. City of Buffalo et al., 125 N. Y. 280, 26 N. E. 263; Ziegler v. Chapin et al., 126 N. Y. 342–348, 27 N. E. 471; Kittinger v. Buf-

falo Traction Co., 160 N. Y. 377–387, 54 N. E. 1081; Govers v. Board of Supervisors of Westchester County, 171 N. Y. 403–408, 64 N. E. 193.

Fraud or bad faith is not charged against the defendants, but it is claimed that they have violated the agreement above mentioned; and it is contended that the expenditure of moneys in consequence of that violation will be an illegal expenditure or waste of the public moneys, a portion of which the plaintiff, as a taxpayer, will be called upon to pay.

Waiving for the present any consideration of the aspect of the case as it may be controlled by the contract, there is no invalidity in the action of the grade crossing commissioners, even though the time chosen for the sale of the bonds and the letting of the contract for the construction of the Perry Street Viaduct may have been inopportune, because of the excessively high cost of labor and materials. The grade crossing act commits to the discretion of the commissioners, among other things, the determination of the proper time to prosecute any of the work essential or proper to the development of the general plan. They may act unwisely; their judgment may be ill-advised, and the expenditures improvident or extravagant; but, if they keep within the purview of their authority, and are clear of the imputation of bad faith or collusion or fraud, their proceedings are not subject to review by a taxpayers' action. Ziegler v. Chapin et al., 126 N. Y. 342, 27 N. E. 471; Talcott et al. v. City of Buffalo, 125 N. Y. 280, 26 N. E. 263; Weston v. City of Syracuse, 158 N. Y. 274, 53 N. E. 12, 43 L. R. A. 678, 70 Am. St. Rep. 472.

The court, in the Ziegler case, in considering the scope of this action, say at page 349, 126 N. Y., and page 472, 27 N. E.:

"The Legislature could not have intended that the courts should supply intelligence and prudence to incapable officials at the demand of a taxpayer, but manifestly did intend to give the latter protection against the dishonesty or fraud of the municipal agents."

In the Talcott Case, after an extended discussion of the origin and import of the policy ingrafted on section 1925 of the Code of Civil Procedure, the court sums up the conclusion of its examination at page 288, 125 N. Y., and page 265, 26 N. E.:

"We have referred to the origin of this statute under which the action is brought, the title of the act of 1872 [Laws 1872, p. 467, c. 161], and the language used by the Legislature subsequently, when re-enacting it in 1881 [Laws 1881, p. 709, c. 531] and 1887 [Laws 1887, p. 885, c. 673], for the purpose of ascertaining whether it was intended to authorize a taxpayer to maintain an action against the members of the common counsel in a city, and the administrative officers thereof, for the purpose of restraining officials acting within the limits and scope of their powers and discretion, such as is alleged in the complaint in this action, and we are of the opinion that it was not. Full force and effect can be given to the statute by confining it to a case where the acts complained of are without power, or where corruption, fraud, or bad faith amounting to fraud, is charged. Any other construction would subject the discretionary action of all local officers and municipal bodies to review by the courts at the suit of the taxpayers."

Any other rule would bear fruit in countless litigation, imperiling the discretionary power of the municipal officers charged with the

performance of administrative functions. Such officers are selected to represent the people of the municipality, and if they act honestly, and do not transcend the limits of their authority, their acts are amenable to condemnation or approval only when any such official may be presented for re-election. His discretion, fairly exercised, is not to be challenged by the courts.

In the present action the trial court has found, and we assume, that the defendants, in selling their bonds and letting the contract, and in the other alleged acts preliminary to the construction of the viaduct, may be charged with the breach of the agreement with the plaintiff. If substantial loss results to one party to an agreement by its violation by the other party, a remedy is generally available to the one injured. The proposition, however, does not signify that, because the parties charged with the breach happen to be the officers of a municipality, a taxpayers' action will lie. That action, as already noted, is a statutory one, founded on the illegal or fraudulent conduct of an officer or body. The action is at the instance of any taxpayer in the taxpaying district. The building of the viaduct cannot be restrained by any other taxpayer of the city of Buffalo. His complaint would be that the expenditure is to be made at an unpropitious time, and that the grade crossing commissioners unwisely exercised the discretion committed to them; and, however grievous the injury, no action will lie. It was not intended that, because one taxpaying citizen or corporation entered into a contract which has been broken to his damage, he may obtain redress under the guise of a taxpayers' action, while no other taxpayer may avail himself of the same remedy. The invalidity which will sustain that action is the usurpation or transgression of authority intrusted to them. The failure to perform an executory agreement is not the illegality which the statute was intended to meet. Other ample remedies are available to one so injured, rather than by an action, the pith of which is official misconduct. The fact that the plaintiff has suffered by reason of the violation of the agreement does not give it any added privilege to resort to the statutory action. If it is likely to suffer damages by the unlawful waste of the property of the city, the plaintiff, as well as any other taxpayer, may maintain an action in equity against the offending officers to prevent the dissipation. That, however, is not the gravamen of the plaintiff's cause of action. It is seeking to enlarge the scope of the taxpayers' action to embrace a case dependent peculiarly upon its agreement, and which damages are exclusively for itself. We apprehend the statute is not sufficiently elastic for that purpose.

It is claimed that the plaintiff, as a taxpayer, will be compelled to contribute towards the expense of constructing the viaduct, and that this construction will be in violation of the agreement, and hence illegal. This contention overlooks the fundamental principle adverted to, that the grade crossing commissioners are vested with the exercise of their judgment in the development of the improvements committed to their charge. If they agree with the railroad company to build the viaduct of one kind of stone, but later decide, in good faith, to use a more costly kind, the plaintiff or any other taxpayer

may not maintain a taxpayer's action to prevent the improvement. The discretion of the board must not be subjected to that restraint. The illegality which authorizes the maintenance of the action savors of bad faith—of a dishonest purpose—and is not analogous to a failure to pay a promissory note at maturity, or to build a house according to contract. The misconduct must be in violation of law or in defiance of a statute, and an excess of authority, to be unlawful. The gist of the charge is lacking in this case.

But it is suggested that the findings show that the city cannot recover of the plaintiff its quota of the cost of the improvement to be made, and consequently that the plaintiff or any other taxpayer may enjoin the prosecution of the work. Every omission or anticipated omission to perform their contract strictly does not put the grade crossing commissioners or the city of Buffalo at the mercy of a taxpayer who may seek by this form of action to stop any particular improvement which the commissioners undertake. They possess authority to do the work in their own way and time, and their contract with the plaintiff is within their power. Their failure to fulfill to the letter its provisions is not illegality akin to fraud or bad faith.

Again, it seems to me, the plaintiff has an adequate remedy at law for any damages it may suffer. Bear in mind, it contends that the defendants are seeking to raise money to construct a viaduct contrary to its agreement. An action in equity to enjoin the violation of an executory agreement, the damages for which breach are ascertainable, and may be compensated for in money, is not permissible, unless some peculiar necessity calls for it. By this agreement the plaintiff is to pay the city in a specific manner and in precise installments. If there is a refusal to pay, any defense which the plaintiff may have is available to it whenever the city endeavors to enforce payment pursuant to the agreement, and the damages, if any, may be easily measured and allowed. Waiving this suggestion, however, we think the action is not maintainable. The judgment should be affirmed, with costs.

Judgment affirmed. All concur, except WILLIAMS, J., who dissents, and HISCOCK, J., not voting.