MEAD et al. v. TURNER et al.

(Supreme Court, Appellate Division, Second Department. November 24, 1909.)

1. MUNICIPAL CORPORATIONS (§ 990*)—CONTRACTS BETWEEN MUNICIPALITIES —LEGALITY OF CONTRACT.

In an action by taxpayers of a village to annul a contract between the village trustees and the city of New York relative to the construction of a sewer system for the village, and to restrain the issuing of any bonds or the imposition of any tax to defray the cost of such improvement, where no evidence was offered that the acts of the officials of either the village or city were fraudulent or collusive, the question becomes simply one of the legality of the contract.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2152; Dec. Dig. § 990.*]

2. MUNICIPAL CORPORATIONS (§ 266*)—CONTRACTS BETWEEN MUNICIPALITIES —CONSTITUTIONALITY OF STATUTE.

Laws 1907, p. 888, c. 428, authorizing the city of New York and a village to enter into an agreement to provide the village with a sewerage system, etc., provides in part that the village of Mt. Kisco is authorized to provide in said agreement that all persons within the village owning buildings on streets where sewers are or may be hereafter constructed shall connect with the sewer system, and on failure to do so, and on fail-

ure of the village to compel such persons to do so within 60 days after notice and demand, then the city of New York may cause the connection to be made at the expense of the owner, which expense may be recovered by the city in a suit in any court having competent jurisdiction. Const. art. 10, § 2, provides that all city, town, and village officers, whose election or appointment is not provided for in the Constitution, shall be elected by the electors of such places, or appointed by such authorities thereof as the Legislature shall designate, and all other officers whose election or appointment is not provided for by the Constitution, and all officers whose offices may be hereafter created by law, shall be elected by the people, or appointed as the Legislature shall direct. *Held,* that the provision of the act of 1907 is not a violation of the constitutional provision, since the persons who, acting in behalf of the city, may enter the village and cause connection to be made with the sewers at the expense of defaulting property owners, are not, while in the performance of such duties, distinctly the officers of either municipality, as chapter 428 does not designate the persons who shall carry out such provisions, and if they should be deemed officers of the city, they are exercising police power pursuant to legislative authority to protect its water supply, and the fact that they may be called upon to perform functions within the physical boundaries of another municipality would not make the statute unconstitutional.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 712–714; Dec. Dig. § 266.*]

3. MUNICIPAL CORPORATIONS (§ 266*)—CONTRACTS BETWEEN MUNICIPALITIES —CONSTITUTIONALITY OF STATUTE.

Had chapter 428 designated officials of the city to enforce its provisions, such officers being unknown when the Constitution was adopted, and the powers and duties of their office not being then in existence, but devolved upon other officers, the act would not therefore be in violation of Const. art. 10, § 2, since the appointment to such office might be made as the Legislature shall direct.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 712–714; Dec. Dig. § 266.*]

4. MUNICIPAL CORPORATIONS (§ 279*) — SPECIAL ELECTIONS — PROPOSITIONS VOTED ON—NUMBERING.

Village Law (Laws 1897, p. 383, c. 414) § 59 (as amended by Laws 1906, p. 96, c. 57), and section 60, provides that, unless otherwise specially provided, the provisions of the election law relating to ballots apply to propositions submitted at a special election. Election Law (Laws 1896, p. 895, c. 909) § 6, as amended by Laws 1905, p. 1578, c. 643, § 2, provides that whenever any question, provided by law to be submitted to popular vote, shall be submitted to the people for their approval, if more than one such proposition or question is to be voted upon, such proposition or question, respectively, shall be separately and consecutively numbered. *Held* that, where the proposition to be voted upon was, "Shall a sewer system be constructed?" it was not necessary that every detail of the plan adopted should be separately stated and numbered, providing they were all germane to the main question submitted.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 739; Dec. Dig. § 279.*]

5. MUNICIPAL CORPORATIONS (§ 279*)—SPECIAL ELECTIONS—PUBLIC IMPROVEMENTS—TAX LEVY.

Where the proposition to be voted on contained the estimated maximum and minimum cost of the improvement, and in express terms provided that bonds should be issued to pay for a specified portion of the cost; and the electors authorized the village to incur the obligation at a cost not to exceed a certain amount, and determined that part of the expense should be met by a bond issue, it was unnecessary to further

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

specify that the residue should be met out of the tax levy, since the law provided no other way in which it should be done.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 739; Dec. Dig. § 279.*]

6. MUNICIPAL CORPORATIONS (§ 314*)—PUBLIC IMPROVEMENTS—PLAN OF— CONSTRUCTION OF STATUTE.

Village Law (Laws 1897, p. 440, c. 414) § 260, as amended by Laws 1906, p. 586, c. 278, providing that the board of sewer commissioners of a village, before taking proceedings for the construction of a sewer system, shall, unless a map and plan have already been officially approved by the state commissioner of health and copies filed in the state department of health and in the office of the village clerk, cause a map and plan of a permanent sewer system, with specifications of connections and outlets or disposal works, should not be so strictly construed as to require the map and plan to embrace every lateral sewer which may become necessary with the growth of the village.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 827; Dec. Dig. § 314.*]

Appeal from Special Term, Westchester County.

Action by Charles Mead and another against Isaac W. Turner, as president of the village of Mt. Kisco and others. From a judgment (60 Misc. Rep. 145, 112 N. Y. Supp. 127) for defendants, plaintiffs appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and JENKS, BURR, and RICH, JJ.

Charles Haines, for appellants.

William N. Dykman, for respondents Turner and others.

Charles Wesley (H. T. Dykman, on the brief), for other respondents.

BURR, J. The plaintiffs, as taxpayers of the village of Mt. Kisco, bring this action against the president and trustees of said village, and the city of New York, to set aside and annul a contract entered into between the said trustees and the said city relative to the construction of a sewer system for the village, and to restrain the issuing of any bonds or the imposition of any tax for the purpose of defraying the cost of such improvement. From a judgment in favor of the defendants, this appeal is taken.

No evidence was offered upon the trial to the effect that the acts of the officials of either the village or city were fraudulent or collusive. Therefore the question becomes simply one of the legality of the contract. Kittinger v. Buffalo Traction Company, 160 N. Y. 377, 54 N. E. 1081; Govers v. Board of Supervisors, 171 N. Y. 403, 64 N. E. 193; Erie R. R. Co. v. City of Buffalo, 96 App. Div. 458, 89 N. Y. Supp. 122.

Prior to 1907 the growth of the village of Mt. Kisco made a sewer system imperative. Two small streams, known as Branch Brook and Mill River, flowed through the village, which were the natural sources of the drainage thereof. These streams were also related to the water supply of the city of New York. To facilitate the adjustment of the conflicting claims of the city to use these streams for potable purposes and the village to use them for sewer purposes, in June, 1907, the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Legislature passed an act, entitled "An act to authorize the city of New York and the village of Mt. Kisco, Westchester county, New York, to enter into a contract or agreement to provide for the disposal of the sewage of said village and to allow the city of New York to acquire such lands as may be necessary in and about said village and to raise funds to carry said contract or agreement into effect." Laws 1907, p. 888, c. 428.  By that act a designated officer of the city and the municipal authorities of the village were authorized in behalf of their respective municipalities to enter into a contract "to provide for the disposition of the sewage of the village of Mt. Kisco in such manner as may be provided for in said agreement."  Thereafter an agreement was entered into which provided that the village of Mt. Kisco should install trunk and lateral sewers, and deliver its sewage at a designated point agreed upon, and that the city of New York should then receive the same and permanently dispose of it, without cost or expense to the said village.  This agreement was submitted to and approved by a majority of the qualified electors of the village at a special election called for that purpose.  The validity of this contract is assailed upon two grounds:  First, that the act above referred to is unconstitutional; and, second, that the proceedings of the village officials under said act were so defective in respect to jurisdictional matters as to make the same void.

The act referred to contains, among others, this provision:

"The village of Mt. Kisco is hereby authorized and empowered to provide in said contract or agreement, that all persons within the village of Mt. Kisco owning buildings on streets where sewers are or may be hereafter constructed, located under said agreement, shall connect with the sewer system as provided in said contract or agreement and in the event of the failure of any person or persons aforesaid to connect with said sewer system and the failure of the village of Mt. Kisco to compel such person or persons to connect with such sewer system within sixty (60) days after notice and demand, then and in that case the city of New York shall have the right to cause said connection to be made at the expense of owners so failing or neglecting to connect with said sewer system which expense may be recovered by the city of New York in a suit in any court having competent jurisdiction thereof."

It is asserted that this clause of the act is in violation of article 10, § 2, of the state Constitution, which provides as follows:

"All city, town and village officers, whose election or appointment is not provided for by this Constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof, as the Legislature shall designate for that purpose.  All other officers, whose election or appointment is not provided for by this Constitution, and all officers, whose offices may hereafter be created by law, shall be elected by the people, or appointed, as the Legislature may direct."

There are two answers to this criticism upon the act:

First, the persons who, acting in behalf of the city of New York, may enter the village of Mt. Kisco and cause connection to be made with the sewers at the expense of negligent or defaulting property owners, are in no sense village officers. It may be that, strictly speaking, they are not city officers while in the performance of such duties.  It has been suggested that, when a sewer is constructed through several municipalities, the Legislature might prescribe some special method of joint

action.   Horton v. Andrus, 191 N. Y. 231, 237, 83 N. E. 1120.   It may be that the officers charged with the performance of duties in accordance with the legislative provisions contained in this act are not, while performing such duties, distinctively the officers of either municipality.   But the persons who shall carry out such provisions are not designated in the act, and if they should be deemed officers of the city of New York they are exercising police power pursuant to legislative authority to protect its water supply.   The fact that they may be called upon to perform functions within the physical boundaries of another municipality does not make the statute under which they act unconstitutional, because in violation of the provisions of the section above quoted.   In the Matter of the Mayor, 99 N. Y. 569, 583, 2 N. E. 642.

Second.  If it were the fact that the act did designate officials of the city to enforce its provisions, the officers who may carry out the same in behalf of the city of New York were unknown at the time when the Constitution was adopted, and the powers and the duties of their office were not then in existence and devolved upon other officers.   The appointment to such office might therefore be made as the Legislature should direct.   People ex rel. Wood v. Draper, 15 N. Y. 532; People ex rel. Kingsland v. Palmer, 52 N. Y. 83; People ex rel. Met. St. Ry. Co. v. State Board of Tax Commissioners, 174 N. Y. 417, 67 N. E. 69; Morgan v. Furey, 186 N. Y. 202, 78 N. E. 869.

In support of the claim that the proceedings of the village officers which led up to this contract are defective, it is urged, first, that the requirements of the election law were not complied with at the time that the special election approving of the plan embodied in the contract was held; and, second, that the provisions of the village law relative to the adoption of a plan for a sewer system were violated.   The village law provides that, unless otherwise specially provided, the provisions of the election law relating to ballots apply to propositions submitted under such law at a special election held as therein provided.   Laws 1897, p. 383, c. 414, § 59 (as amended by Laws 1906, p. 96, c. 57), and section 60.   The election law provides, among other things, that whenever any question provided by law to be submitted to popular vote shall be submitted to the people for their approval, if more than one such proposition or question is to be voted upon at such election, such proposition or question, respectively, shall be separately and consecutively numbered.   Laws 1896, p. 895, c. 909, § 6, as amended by Laws 1905, p. 1578, c. 643, § 2.

We do not feel called upon to decide whether, at the special election held with reference to this contract, the provision above referred to was applicable; for, if it was, we think that there was a substantial compliance with the requirements of the statute.   The proposition to be voted upon was a simple one, namely: Shall a sewer system be constructed?   It was not necessary that every detail of the plan adopted by the two municipalities should be separately stated and numbered, provided that they were all germane to the main question submitted to the electors for their approval or rejection and facilitated its accomplishment.   People ex rel. Devery v. Coler, 173 N. Y. 103, 65 N.

E. 956; In the Matter of Clinton Avenue, 57 App. Div. 166, 68 N. Y. Supp. 196, affirmed 167 N. Y. 624, 60 N. E. 1108; Matter of N. Y. & Brooklyn Bridge, 72 N. Y. 527.

The chief criticism made upon the argument of this appeal was that the proposition nowhere stated that a portion of the expense of carrying out this contract should be met by a general tax. But the proposition as submitted contained a statement of the estimated maximum and minimum cost of the improvement, and in express terms provided that bonds should be issued to pay for a specified portion of such cost, to wit, $59,800. When the electors determined that the village should incur obligation for the construction of a sewer system at a cost not to exceed $100,000, and that a part of such expense should be met by a bond issue, it was unnecessary to further specify that the residue should be met out of the tax levy. The law provided no other way in which it should be done.

Finally, it is contended that the map and plan as adopted is not comprehensive, and does not cover all portions of the village, and that in this respect the requirements of the village law were not complied with. Laws 1897, p. 440, c. 414, § 260, as amended by Laws 1906, p. 586, c. 278. The learned trial court has found that the plans and specifications for the said sewer system were in the form required by law. There was no specific finding of fact as to what was comprised in or omitted from the general plan, nor was any finding thereon requested by the plaintiffs and appellants. The evidence shows that the plan proposed provided a system of sewers which would be efficient to drain all portions of the village, if connections were made therewith. It is true that upon the map and plan proposed it was not specifically provided that a sewer should be built through every street and road within the village, whether or not houses were built thereon, and in a few instances where houses had been built upon a street or road no immediate connection with the sewer system was provided. In at least one instance the evidence leaves it in great doubt whether the few houses there constructed fronted upon an opened street or road. But as to all of them the evidence was undisputed that lateral sewers could readily be constructed to connect with the main sewers laid down upon the map, and it may well be that, as the trustees seem to have concluded, there was no present necessity for any other provision for these localities.

We agree with the opinion of the court at Special Term that the provisions of section 260 of the village law should not be so strictly construed as "to require the map and plan to embrace every lateral sewer which may become necessary with the growth and development of the village. It would, indeed, be almost impossible, or at least well-nigh impracticable, to prepare a plan with that degree of absolute completeness."

The judgment appealed from should be affirmed, with costs. All concur.