HENRY FLETCHER, Plaintiff, *v.* JOHN F. HYLAN, as Mayor of the
City of New York, and Another, Defendants.

Supreme Court, New York Special Term, July 30, 1925.

Municipal corporations — radio broadcasting stations — application in
taxpayer's action for temporary injunction to restrain or restrict use of
broadcasting station established for certain municipal departments of
city of New York — maintenance and operation of station authorized
by board of estimate and apportionment " for the establishment of
a radio-telephone service as an adjunct " to certain city departments—
continued operation of station for use of various city departments in
conduct of business of municipality may not be enjoined— station not
limited for transaction of departmental business only — fact that
various officials have utilized station for dissemination of political
propaganda does not warrant injunction.

Plaintiff, in an action as a taxpayer, to restrain the defendants from maintaining
or operating a radio broadcasting station in the city of New York and from
using said station for broadcasting any political propaganda or for any political
purpose, is not entitled to a temporary injunction restraining or restricting
the use of said station, where it appears that its maintenance and operation
was authorized by the board of estimate and apportionment of said city " for
the establishment of a radio-telephone service as an adjunct " to certain depart-
ments of said city and that the station is used to some extent by the police
department and is about to be used by the fire department, since authority
is vested in the said board of estimate and apportionment to construct and
maintain such an instrumentality for the use of the various departments of
the city government in the conduct of the municipality. Nor is said station
limited to the transaction of departmental business in the absence of an express
intention to the contrary.

The fact that various officials of said municipality have utilized said station for
the dissemination of political propaganda does not warrant the issuance of an
injunction.*

MOTION for a temporary injunction to restrain or restrict the use of
a radio broadcasting station established for certain city departments.

*Leonard M. Wallstein* and *Ralph M. Frink*, for the plaintiff.

*George P. Nicholson, Corporation Counsel [William E. C. Mayer
and John Lehman* of counsel], for the defendants.

CHURCHILL, J.:

The action is by a taxpayer to restrain the defendants from
maintaining or operating the radio broadcasting station known as
WNYC " and from using any such broadcasting station for broad-
casting any political propaganda or for any political purpose or for
the political exploitation or aggrandisement of any official of the city
of New York or for broadcasting any reports or comments on the

---

* Injunction, granted by Mr. Justice LEVY on September 4, 1925, continued by
Mr. Justice MAHONEY on September 12, 1925.

Supreme Court, July, 1925.      [Vol. 125

activity of any department, board, bureau, employee or commission thereof." This motion seeks the same relief pending the trial of the action.

The construction, maintenance and operation of the station were authorized by resolution of the board of estimate and apportionment. The expressed purpose was "for the establishment of a radio-telephone service as an adjunct to the Police and Fire Departments and such other departments as may require or use such service."

There is no room for debate concerning the power of the city to construct and maintain such an instrumentality for the use of the various departments of the city government in the conduct of the business of the municipality. The affidavits show that it is so used to some extent by the police department and is about to be used by the fire department, especially in connection with the fireboats. The continued maintenance of the station, therefore, may not be restrained and the only question is whether its operation may be restricted.

The first inquiry is whether the use of the station should be confined strictly to departmental business. It is shown that it has, in fact, been largely used by various officials of the municipal government for the diffusion of opinions on matters more or less connected with the civic and political questions of the hour. These addresses by heads of departments and other officials narrated the activities of the various departments or of the city government generally. Some of them contain much in the way of general comment on men and measures and political policies, and are characterized in the moving papers as "political propaganda." Music is also broadcast, and so are talks on health, domestic economy and other subjects of general interest or educational value.

I think it was within the discretion of the legislative body either to confine the use of the station to the administrative work of the city officials or to permit a wider use. It cannot be said that the public moneys are being spent for other than city purposes merely because the latter alternative has been chosen. Dispassionate discussion of civic problems by officials in daily contact with the actual administration of the affairs of the city government might be of very great value to the people of the city. It is true that the power to set forth such questions to the large audiences which the radio brings to the speaker is easily capable of abuse and, if abused, may be productive of evil. But it was for the legislative agency to decide whether the power of doing good was outweighed by the danger that harm might be done. That is a question

which the court has no right to consider. " Whatever evils may exist in the government of cities that are due to mistakes, errors of judgment or the lack of intelligent appreciation of official duty, must necessarily be temporary, compared with the mischief and inconvenience which judicial supervision, in all cases, would ultimately produce." (*Talcott* v. *City of Buffalo*, 125 N. Y. 280, 288.)

The view that the local legislature had the power to authorize the employment of the radio for the dissemination of general information with regard to the conduct of the city government is consonant with the policy of our municipal law. This is shown, I think, by several statutory provisions.

By section 20, subdivision 16, of the General City Law (as added by Laws of 1913, chap. 247) it is provided that, subject to the Constitution and general laws, every city is empowered " to establish and maintain such institutions and instrumentalities for the instruction, enlightenment, improvement, entertainment, recreation and welfare of its inhabitants as it may deem appropriate or necessary for the public interest or advantage." By section 1175 of the Greater New York charter it is provided that the board of health " may establish as it shall deem wise, and to promote the public good and public service " regulations for giving publicity to its reports and proceedings, and may publish such information as may, in its opinion, be useful concerning the general sanitary conditions of the city. By section 1333 of the charter the annual report of the tenement house commissioner may be published in book form for general information. And by section 1334 he is authorized to provide for the publicity of the reports and proceedings of his department whenever he deems it necessary for the public good and public service.

It is conceded that under section 630 of the charter the park department is authorized to furnish musical entertainment to the public.

So it has been decided that the public moneys may be properly spent for city purposes in providing for a public celebration in commemoration of an historical event in the life of the city. (*Schieffelin* v. *Hylan*, 236 N. Y. 254.)

The use of the radio to secure publicity is but the adoption of a new and more effective method to achieve the original purpose.

I do not think the resolution of the board of estimate can be properly construed to mean that the radio station should be employed for the transaction of departmental business only. If such a limitation had been intended it would have been natural to express it. It is not a reasonable inference that so narrow a restriction was intended though not expressed. It follows, there-

fore, that the use of the radio station for other than strictly departmental business is not necessarily unlawful.

But though the station may be lawfully used otherwise than in the conduct of the municipal departments there are limits to its proper use. The right to use it for the general information of the community upon the public affairs of the city is one thing. Its use for polemical discourse on political subjects is quite another, and cannot be justified under the resolution which authorized its construction and operation. It is shown that there has been much in the way of intemperate speech and unrestrained criticism of public officials and others. But the court cannot undertake to restrain what is denominated in the papers as " political propaganda " or to forbid the use of the station for political purposes. The court will not issue an injunction unless the acts sought to be prohibited are susceptible of precise definition and unless it is able to enforce its mandate or punish its violation. The thing forbidden must be so plainly defined that there is no room for doubt or debate concerning the extent of the prohibition. In the nature of the case, the line between the fair presentation of municipal problems, on the one hand, and partisan or personal political exploitation or propaganda on the other, cannot be distinctly defined in advance. Whether or not the injunction had been violated would be a matter of constant debate. To enforce its injunction the court would be obliged to constitute itself a censor over the speeches made from day to day. Condemnation of the utterances of today would not prevent other abuse tomorrow. The court would in effect assume the obligation of constant supervision over the communications of public servants to the people of the community. This would be intolerable. The discretion and good taste of the public officials are the only safeguards against such abuse of power. It is beyond the reach of the injunctive process of the courts.

The question whether or not the broadcasting of music and of general lectures can be justified under the terms of the resolution authorizing the maintenance of the station is not before the court. Plaintiff does not ask the court to restrain educational uses if he otherwise fails.

The application is denied.